## JOHN WILLARD v. DARRAH, Appellant.

### Division One, May 21, 1902.

1. **Will: EXTRINSIC EVIDENCE: IDENTIFICATION OF DEVISEE.** In this case it is held that extrinsic evidence is competent to show that a devise to testator's "well-beloved nephews, John and William Willard," was meant to be a devise to his grandsons of the same name.

2. ———: ———: **LATENT AMBIGUITY.** Extrinsic parol evidence is admissible to solve a latent ambiguity produced by extrinsic evidence in the application of the terms of the will to the objects of the testator's bounty.

3. ———: ———: ———: **TWO SETS OF BROTHERS: PRESUMPTION.** Testator left surviving him three daughters, two sons, two grandsons, who were children of a deceased son, and two other grandsons, John and William Willard, sons of a deceased daughter. These two grandsons lived near testator and owned land adjoining that devised "to my well-beloved nephews John and William Willard." He was very intimate and friendly with them, and repeatedly declared that he bought this land for them. If they were not meant by these words in the will, they were not mentioned therein at all and he died intestate as to them. The will disposed of all the property he owned, and all his other descendants were mentioned. He also had a nephew named John D. Williard, who had two sons, John and William Willard, who were strangers to testator, never visited him and never resided near him. *Held*, first, that the law presumes that it was the intention of the testator to dispose of his entire estate and not to die intestate as to his said grandsons, and thus leave them to disturb all his devises by claiming under the statute; second, it is to be concluded, from the way these two persons, designated as "my well-beloved nephews John and William Willard," are coupled together in the joint devise, that they are of the same class, that is to say, they are brothers having the same claim upon

the testator's bounty, and, hence, under the facts, must be either grandsons or grandnephews; third, parol evidence was admissible to show that the words "well-beloved" was descriptive of the grandsons and wholly inapplicable to his grandnephews; fourth, the word nephew can not be held to include grandnephews; and, fifth, the testimony of the scrivener, that the testator directed that the land in question should be given to his grandsons, and that by mistake he wrote the word "nephew," was admissible.

Appeal from Saline Circuit Court.—*Hon. Richard Field,* Judge.

REVERSED.

*W. M. Williams* and *Duggins & Rainey* for appellant.

(1)    The appellate court will look into all the facts in evidence, showing the situation of the testator, his family, and the condition of his property, and all the circumstances surrounding him at the time of the execution of the will, in order to ascertain for whom he intended the devise contained in the fourth clause of said will. This court is not bound by the conclusions of the trial court, but will examine for itself the extrinsic facts, which were properly introduced in evidence, to explain the ambiguity as to the persons who are to take under the fourth clause. Land Co. v. Bretz, 125 Mo. 418; McMillan v. Farrow; 141 Mo. 62; Murphy v. Carlin, 113 Mo. 117; sec. 4650, R. S. 1899. (2)    In the construction of wills, unquestionably, the intention of the testator is the governing principle—the point to which all examinations should be directed. The circumstances of each individual case vary so much from those of most other cases that it is difficult to determine from the explanation or construction of one will what would control in the construction of another; and all that can be done is to ascertain, from all the facts and circumstances surrounding him, his property and those to whom it is left, and the language of the will, what was prob-

ably intended. Land Co. v. McElrath, 53 Fed. Rep. 763.
(3)   There is nothing in the will extending the devise to
any grandnephews, and the word nephews, unless extended
by some peculiarities, does not include grandnephews. Mat-
ter of Woodward, 117 N. Y. 526; Low v. Harmony, 72 N.
Y. 408; 16 Am. and Eng. Ency. Law (1 Ed.), p. 485;
Underhill on Wills, sec. 596.   (4)   The grandsons, John
and William Willard, being misdescribed as nephews, and
there being no nephews bearing those names, this creates a
latent ambiguity in the will of William Nelson.   "A latent
ambiguity is where you show that words apply to two differ-
ent things or subject-matters, and then evidence is admissible
to show which of them was the thing or subject-matter in-
tended."   6 Lawson's Rights and Remedies, sec. 2313; Patch
v. White, 117 U. S. 210.   "It is settled doctrine that as a
latent ambiguity is only disclosed by extrinsic evidence, it
may be removed by extrinsic evidence."   Underhill on Wills,
sec. 221, p. 324, and sec. 596.   The incorrect naming in a
will of a beneficiary (a granddaughter) creates a latent am-
biguity, and extrinsic evidence is admissible to remove it.
Gordon v. Burris, 141 Mo. 611; 1 Greenleaf Evidence, sec.
301; Schouler on Wills (2 Ed.), sec. 589.   Parol evidence
is admissible to explain the latent ambiguities of an instru-
ment, and to aid in interpreting it.   Shuetz v. Bailey, 40
Mo. 74; Smith v. Alexander, 31 Mo. 195; Ins. Co. v. St.
Mary Seminary, 52 Mo. 489; 6 Lawson's Rights and Rem-
edies, sec. 2313; Vernor v. Henry, 3 Watts (Penn.) 385;
Goff v. Roberts, 72 Mo. 573.   Where the language of the
will is applicable to each of two or more persons or things,
it is not only permissible to introduce evidence directly as
to the intention of the testator, based upon the circumstances
of the case, but evidence of the testator's own declarations
may be adduced to show the person or thing intended. Beach
on Wills, sec. 356; Vernor v. Henry, supra; Williams v.
Carpenter, 42 Mo. 341.   Parol evidence is admissible to

identify legatee in a will.   Leonard v. Davenport, 58 How. Pr. 384; Taxbury v. French, 41 Mich. 7; Underhill on Wills, sec. 910; Riggs v. Meyers, 20 Mo. 242; Creasy v. Alverson, 43 Mo. 22; Small v. Field, 102 Mo. 122; Ryall v. Hannan, 10 Beav. 536; Lefever v. Lefever, 59 N. Y. 440; St. Luke's Home v. Association, 52 N. Y. 191; Ross v. Kiger (W. Va.), 26 S. E. 193; Thomas v. Stephens, 4 John. Ch. 607; Thayer v. Boston, 81 Mass. 347; Schouler on Wills (2 Ed.), sec. 589.   Parol evidence is admissible to identify the person mentioned in case of latent ambiguity.   Langlois v. Crawford, 59 Mo. 467; Skinker v. Haagsma, 99 Mo. 212; Jackson v. Stanley, 10 Johns. 133, 6 Am. Dec. 319; Coit v. Starkweather, 8 Conn. 289; Peabody v. Brown, 76 Mass. 45; Avery v. Stites (Ohio), Wright 56; Begg v. Begg, 56 Wis. 534; Schouler on Wills (2 Ed.), secs. 583 and 589.

*Alf. F. Rector, A. R. Strother* and *Frank P. Sebree* for respondent.

(1)   The evidence of Edwards as to the instructions given to him by the testator for drawing the will, and as to the declarations made to him by the testator as to what disposition he intended to make of his property, and as to what provisions he intended to make for his grandchildren, John and William Willard, was all incompetent and was therefore properly excluded.   Davis v. Davis, 8 Mo. 56; Gregory v. Cowgill, 19 Mo. 415; Goode v. Goode, 22 Mo. 518; Bradley v. Bradley, 24 Mo. 311; Avery v. Chappel, 6 Conn. 270; Tucker v. Seaman's Aid Society, 7 Met. (Mass.) 188; Hanner Junior v. Moulton, 23 Fed. Rep. 5; Doe ex dem. Hiscocks v. Hiscocks, 5 Mees. & Wells. 363; Miller v. Travers, 8 Bingh. 244; Drake v. Drake, 8 H. L. Cas. 172; Wilkins v. Allen, 18 How. (U. S.) 385; Dunham v. Averill, 45 Conn. 61; Schouler on Wills, secs. 567, 568, 569, 578, 587.   (2) The statements of the testator to Edwards as to what he desired

put in his will were privileged communications and Edwards was an incompetent witness to prove them. This evidence was therefore properly excluded. Sweet v. Owens, 109 Mo. 6. (3) There is no latent ambiguity in this case. Hardy v. Mathews, 38 Mo. 124; Goode v. Crowe, 51 Mo. 212; Doe ex dem. Hiscocks v. Hiscocks, supra. (a) In the case of Hardy v. Mathews, supra, latent ambiguity is said to be "where you show that words apply equally to two different things or subjects, and then evidence is admissible to show which of them was the thing or subject-matter intended." No such case is developed by the evidence in the case at bar. There were not two sets of nephews named John and William Willard nor two sets of grandchildren of those names. The terms used can not therefore "apply equally to two different things or subjects." There were two grandnephews and two grandsons of those names, and one nephew named John D. Willard. The will was written at the dictation of the testator and read over to him before its execution. On this evidence the court can not say, without guessing at it, that the word "nephews" was used by the testator to mean "grandsons" and not to mean "grandnephews." (b) Giving full effect to the evidence of Edwards, which was excluded by the trial court, it amounts only to this, that the clear and unambiguous language of the will was a mistake of the scrivener. The court is now asked, not to construe the will and resolve a latent ambiguity, but to reform the will itself and correct this alleged mistake, and make a will for the testator which he did not make. This can not legally be done. Webb v. Hayden, 166 Mo. 39; Hurst v. Von de Veld, 158 Mo. 239; Murphy v. Catlin, 113 Mo. 112; Mersman v. Mersman, 136 Mo. 259. (4) If the court is unable, upon all the competent evidence, to say whom the testator intended as the beneficiaries of the fourth clause of his will, that devise is void for uncertainty. Drake v. Drake, 8 H. L. Cas. 172; Re Stevenson (1897), 1 Ch. 75; Thomas v. Thomas, 6 Term

Rep. 671.    (5)    The plaintiff, John Williard, being a grand-son of the testator, and not being "named or provided for" in his will, is entitled to his share of the testator's estate as in case of intestacy.  R. S. 1889, sec. 8877; R. S. 1889, sec. 4611; Pounds v. Dale, 48 Mo. 270.

BRACE, P. J.—This is a suit in ejectment for the possession of an undivided one-eighth interest in a tract of land in Saline county, described in the petition.    William Nelson, late of said county, deceased, is the common source of title. He died testate on December 12, 1892, seized in fee simple of the premises; leaving him surviving: three daughters, the defendant, Mariah Darrah, and her two sisters, Nannie Brown and Sarah Bryan; two sons, James Nelson and John Nelson; and four grandsons, Ord Nelson and Corley Nelson, sons of his deceased son Lawrence, and plaintiff John Willard and his brother William Willard, sons of his deceased daughter Elizabeth.

By his will the testator devised the premises in question to his said daughter the defendant Mariah Darrah, named therein, his sons James and John; made provision for his other two daughters, Nannie Brown and Sarah Bryan, and for his two grandsons Ord and Corley Nelson, and made the following further devise:

"4th.    I give, devise and bequeath to my well-beloved nephews, John and William Willard, the following described tracts, lots or parcels of land situate in the county of Saline and the State of Missouri, to-wit:    The northeast quarter of the northeast quarter of section twenty-two; the northwest quarter of the northeast quarter of section twenty-two; the northwest quarter of the northwest quarter of section twenty-three; all in township fifty-one, range twenty-three, and the sum of fifty dollars in money, to be paid them out of the proceeds of my personal property.    To have and to hold the said

land unto the said John Willard and William Willard, their heirs and assigns forever."

On the trial the plaintiff introduced parol evidence tending to prove that at the time of his death the testator had a nephew named John D. Willard, and several grandnephews, sons of the said John D., one of whom was named John Willard, and the other named William Willard, and upon these facts claimed that he was pretermitted in said will, and as one of the heirs at law of his grandfather is entitled to the interest sued for in the land devised to the defendant Mrs. Darrah.    To meet this claim the defendant introduced evidence tending to prove that the said nephew John D. Willard, and the said grandnephews John Willard and William Willard, sons of the said John D., were strangers to the testator, never visited him and never resided near him.    That the grandsons John Willard and William Willard lived near their grandfather, owned land adjoining the land described in the fourth clause of the will, that he was very intimate and friendly with them, and repeatedly declared that he had bought this land for them, and also introduced E. M. Edwards, a lawyer, as a witness who testified in substance that he drew the will at the request of the testator, who directed that this land should be given to the said grandchildren John and William Willard, but by mistake he wrote the word "nephews" instead of "grandchildren" in that clause of the will.    Without setting out this parol evidence at length, it is sufficient to say, that it appears therefrom, beyond a reasonable doubt, that the testator intended by the fourth clause of his will to devise the land therein described to his well-known and well-beloved grandchildren, the plaintiff John Willard and his brother William Willard, and not to his two grandnephews of the same names, who were not personally known to, or well-beloved of him.    The case was tried before the court without a jury.    The court rejected the evidence of Edwards the scrivener, found the issues for the plaintiff, and

from the judgment in his favor the defendant appeals. And thus the only question for determination in the case is presented.

Unless the devise in the fourth clause of the will is to the plaintiff and his brother William, the plaintiff is not named or provided for in the will of his grandfather. As to him he died intestate, and the judgment is for the right party. [R. S. 1899, sec. 4611.] The devise is to them, however, if such was the intention of the testator, and in determining whether such was his intention, resort to extrinsic evidence is necessary from the very nature of the inquiry, which is not as to the context of the will, but as to its application to persons external, i. e., the identification of the beneficiaries. The difficulty in such cases is to determine how far in that direction the courts may go in order to discover the true intent and meaning of the testator.

It is well-settled law "that for the purpose of determining the object of the testator's bounty, or the subject of disposition, or the quantity of interest intended to be given by his will, a court may inquire into every material fact relating to the person who claims to be interested under the will, and the property which is claimed as the subject of disposition, and to the circumstances of the testator, and of his family and affairs, for the purpose of enabling it to identify the person or thing intended by the testator, or to determine the quantity of interest he has given by his will (Wigram on Wills, 51)." [Riggs v. Myers, 20 Mo. l. c. 243.] And such inquiry may extend to the whole environment of the testator, and to his feelings towards those named as beneficiaries or naturally tied to him. [RoBards v. Brown, 167 Mo. 447; Webb v. Hayden, 166 Mo. l. c. 46, and cases cited.] In Creasy v. Alverson, 43 Mo. 13, the instructions given by the testator to the scrivener of his will were held to be within the rule approved in Riggs v. Myers, for the purpose of identifying a tract of land misdescribed in the will by mistake of the

scrivener. In Thomson v. Thomson, 115 Mo. 56, for a like purpose a prior informal unattested will of the testator was admitted in evidence, and in Gordon v. Burris, 141 Mo. 602, direct extrinsic evidence of intention was admitted for the purpose of showing a devisee was meant who was misnamed in the will. There is much conflict of judicial opinion on the subject. The cases are numerous and irreconcilable; many of them are cited in the briefs of counsel. They have been so often reviewed that a further review seems a work of super-erogation. A learned and able text-writer, from such a review, deduces the following conclusion:

"The two classes of cases, then, in which direct evidence *dehors* the will appears admissible to show the testator's intention, are these: (1) Where the person or thing, the object or subject of the disposition, is described in terms which are applicable indifferently to more than one person or thing. (2) Where the description of the person or thing is partly correct and partly incorrect, and the correct part leaves something equivocal. Or, perhaps, to take a broader view of the subject, extrinsic evidence of intention may be admitted whenever the instrument is insufficiently expressed or applied in terms so as to raise a doubt of the object or subject intended, and in order to give the disposition effect, that doubt must be cleared and the insufficiency supplied. On the other hand, such extraneous proof should be ruled out, whenever its tendency is to establish an intention different in essence from what the will expresses on its own face; for when admissible it is in aid of the testator's expressed intention, not against it." [Schouler on Wills (3 Ed.), sec. 576.]

In another valuable and more recent work, in which the citation of cases is brought up to date, the law on the subject is more elaborately stated as follows:

"In every case the court is entitled to be placed in possession of all the information which is available of the circumstances of the estate and family of the testator when he made

his will, to the end that the court may be in his situation as nearly as may be, and may interpret and understand the will as he would if he were living. When the evidence of extrinsic circumstances is all in, it may appear that a description in the will which was intended by the testator to apply to one object or thing is applicable, with more or less certainty, to several objects or things. This is a case of latent ambiguity, and parol evidence is then received to ascertain which person or thing was intended by the testator. Where the ambiguity is latent, it is created by evidence of extrinsic facts, and the same evidence is admissible to remove it. But such evidence is not direct evidence of intention, and if the rule in relation to the reception of parol evidence to solve latent ambiguities permitted the introduction of such evidence only, it would not require a separate discussion, as it would be synonymous with the rule that extrinsic facts are always admissible to explain the language of the will, regardless of the nature of the ambiguity, whether it be patent or latent. The principle goes much further than this. It is not to be confined to the admission of facts appertaining solely to the circumstances of the testator, and which merely tend to show the meaning of his words. Under it evidence showing or suggesting a direct inference of intention as to the things or objects disposed of in the will, including the testator's declarations of intention uttered at the execution of the will, and, according to some of the cases, subsequently thereto, are received to assist the court in disposing of the latent ambiguity, by showing which of several persons or things answering to the description was intended by the testator. Hence, it will be seen that there may be, and usually is, an essential and radical difference between the evidence which raises or creates the latent ambiguity, i. e., proof of extrinsic circumstances of the case, and the evidence which removes it or explains it, and which may be declarations of the intention of the testator as well as evidence of circumstances.

"It is not necessary, in order that parol evidence may be received, that the description in the will shall apply precisely and in every respect to two or more persons or things. In some cases where the rule has been invoked, two persons of exactly the same name, or answering precisely to the same description, have claimed. But the law requires only that the testamentary description shall apply to the several objects with legal certainty, so that the mind of the court is satisfied. The description, whether by name, locality or occupation, must be sufficient to fairly satisfy the court that the testator may have meant either of the several persons or things which are revealed by the extrinsic evidence. . . . . Thus, if a benefit is claimed by several persons, all answering the description of the will in one or more material particulars, though none of them answers to it perfectly and accurately in every particular, extrinsic evidence is received, including expressions of intention." [2 Underhill on the Law of Wills, sec. 910.]

From a careful examination of many of the legion of cases, bearing on this subject, we are satisfied that the doctrine announced by these text-writers is supported by the weight of authority, and being consonant with justice and reason, and promotive of that public policy declared by statute, which requires all courts in the execution of wills to have due regard to the true intent and meaning of the testator, it may well be adopted as furnishing to a certain extent practical, working rules for such cases. Mindful thereof, then, we start out in this case with the testator's will in hand, for the purpose of ascertaining whether the plaintiff, according to the true intent and meaning of the testator, is named or provided for in his will, and we start with the legal presumption that he is named or provided for therein, for having executed his will in due form, apparently making a complete disposition of all his property, the law presumes that it was the intention of the testator to dispose of his whole estate by will and not to die

intestate as to his grandsons John and William Willard, and have part of his estate pass by will and part by. descent. [Ro-Bards v. Brown, 167 Mo. 447; Watson v. Watson, 110 Mo. 164.] Coming to the fourth clause of the will, we find therein a devise and bequest of certain real estate, and a sum of money to "John and William Willard."

From the way the names are coupled together in this joint devise, we at once conclude that these persons are of the same class, that is to say, are brothers having equal claims upon the bounty of the testator. If the devise had been in this form, simply without further descriptive words, and upon inquiry it was found from the indirect parol evidence, which is always admissible for the purpose of indentifying the object of the testator's bounty, that there were two sets of brothers, each named "John and William Willard" and each having equal legal claims upon the testator's bounty, there could be no question under all the authorities that direct parol evidence, *dehors* the will, of the testator's intention, would be admissible to determine which of the two sets he meant [Schouler on Wills (3 Ed.), sec. 575], the case coming then within that class where the object of the disposition is described in terms applicable, indifferently to both. The devise in this instance is, however, apparently more specific. It is to "my well-beloved nephews John and William Willard," and it is found from the indirect parol evidence that there are two sets of brothers, each named "John and William Willard." The plaintiff and his brother, "well-beloved" grandsons of the testator, and two grandnephews, not "well-beloved" of him, and having no legal or moral claim on his bounty.

As to each of these sets of brothers the description contained in the will is partly correct and partly incorrect. It is correct as to the Christian and surnames of each set; it is correct as to neither in the superadded description of relationship to the testator, as the word "nephew" *simpliciter* can not be held to include grandnephews [Underhill on Wills, sec.

596; Matter of Woodward, 117 N. Y. 522; 16 Am. and Eng. Ency. of Law, 485] and the inapplicability in this case is reinforced by the word "beloved" prefixed thereto. So that the description in the will, when it comes to be applied to those only who can possibly have been intended, is just as equivocal in point of fact as if these additional words of description had been omitted, as in the first case supposed.

The description of the persons is partly correct and partly incorrect, leaving something equivocal. The description does not apply precisely to either of these two sets of brothers, but it is morally and legally certain that it was intended to apply to one or the other, thus bringing the case within the rule established by the second class of cases in which direct or extrinsic parol evidence including expressions of intention are admissible. Such evidence was therefore admissible in this case in order to solve a latent ambiguity produced by extrinsic evidence in the application of the terms of the will to the objects of the testator's bounty, to prevent the fourth clause of the will from perishing, and obviate a partial intestacy of the testator. Its effect is not to establish an intention different in essence from that expressed in the will, but to let in light by which that intention, rendered obscure by outside circumstances, may be more clearly discerned, and the will of the testator in its entire scope effectuated according to his true intent and meaning. Hence, we conclude that the court erred in rejecting the evidence of the scrivener Edwards, and in holding that the plaintiff was not named or provided for in the will of his grandfather, the said William Nelson. The judgment of the circuit court is therefore reversed. All concur.