# THOMAS F. MURPHY, et al., Respondents, v. THOMAS F. CLANCY, et al., Appellants.

**Springfield Court of Appeals, February 24, 1914.**

1. **WILLS: Witnesses: Competency: Renunciation of Rights Under Will.** A witness to a will by executing a renunciation of all rights thereunder, renders herself competent to testify. (Citing Sec. 574, R. S. 1909).

2. **APPELLATE PRACTICE: Order of Proof: No Objection Made in Motion for New Trial.** Where the order of proof was not objected to at the time and no complaint was made as to same in a motion for a new trial, the appellate court will not consider such objection.

3. **APPELLATE PRACTICE: Instructions: Necessity of Objections.** Where no objection was made at the trial to an instruction, such objection will not be considered by the appellate court.

4. **INSTRUCTIONS. Wills: Intention of Testator: Circumstances.** An instruction in a will contest which recognizes the right of the jury not only to consider the language of the instrument but also the intention of the testator as shown by the circumstances in evidence, is not error, especially when no objection to the giving thereof was made.

5. **WILLS: Latent Ambiguities: Parol Evidence to Explain.** Latent ambiguities in a will may be explained by parol evidence.

6. **WILLS: Omission of Formal Parts: Not Fatal.** The absence of formal parts of a will is not fatal to the disclosure of a testamentary intent upon the part of the person who executed it.

7. **WILLS: Intention of Testator: Circumstances Explanatory: Form.** If under all of the circumstances it appears that an instrument was intended to be testamentary the court will give effect to the intention if it can be done consistently with the language of the statute; and the particular form of the instrument is not material.

8. **WILLS: Form: Immateriality.** Where sufficient testimony identified separate sheets of paper as the original sheets on which a will was written, it is immaterial that the sheets were separated.

9. **WILLS: Witnesses: Statements of Testator in Presence of.** It is proper for the jury to consider all that was said and done by the testator in the presence of the witnesses at the time and all circumstances immediately connected with the making of the will, whether immediately before or immediately after they signed their names as witnesses.

10. **WILLS: Making of: Witnesses: Formality.** There was no necessity of a formal request by a testator that witnesses sign the will as such where, at the testator's request, witness was procured and the other witnesses heard the instrument which bore on its face evidences of a testamentary intent read to the testator. Nor was there any necessity of testator's formal declaration that it was his will.

11. **WILLS: Revocation by Subsequent Instrument: Form and Effect.** Where an instrument was in the form of a letter to the president of a bank but was in fact of testamentary nature and intended as a revocation of a will formerly made, its purpose will not be defeated because the instrument was not sought to be enforced nor delivered to the banks until after testator's death.

12. **WILLS: Revocation of Prior Will: What Sufficient: Intent.** Where a letter written to the president of a bank by a testator was in effect a will intended to revoke a former will and codicil it became effective on testator's death for that purpose, irrespective of what had been done with it or into whose possession it had been placed by others without his direction.

13. **INSTRUCTIONS: Incorporated in Other Instructions: Refusal not Error.** It is not error to refuse an instruction which hypothetically submits facts properly incorporated in other instructions given.

Appeal from Greene Circuit Court.—*Hon. Alfred Page,* Judge.

AFFIRMED.

*Henry C. Young* for appellants.

(1) Mrs. Steffy was incompetent as a witness and was not rendered competent by the alleged renunciation. R. S. 1909, secs. 570-577; Miltenberger v. Miltenberger, 78 Mo. 27; Hogan v. Hinchey, 195 Mo. 527-534. (2) Verbal testimony introduced for the purpose of aiding in the interpretation of the alleged will, and

especially in contradiction of its terms, was wholly in admissable. American Bible Society v. Pratt, 91 Mass. 109; Appeal of Baker (Pa.), 8 Atl. 630; Barnes v. Sims (N. C.), 49 Am. Dec. 435; Davis v. Davis, 8 Mo. 56; Lehnhoff v. Thiene, 184 Mo. 346; Brooks v. Brooks, 187 Mo. 476. (3) All testimony as to statements made by decedent relative to his intentions concerning the execution of the alleged will was incompetent and immaterial. Hamilton v. Crow, 175 Mo. 634; Mersman v. Mersman, 136 Mo. 244; Watson v. Watson, 110 Mo. 164; Rule v. Maupin, 84 Mo. 589; Thompson v. Ish, 99 Mo. 170. (4) The alleged will should not have been admitted in evidence. Miltenberger v. Miltenberger, 78 Mo. 27. (5) It is clearly manifest from the whole record that the witness Arnold, who signed the document under which respondents claim, as a witness, was informed by no one at the time of the signature, that he was attesting a will. Hence the instrument as a will is abortive, because both attesting witnesses to a will must know at the time of such attestation, that they are called upon to execute a will. Orrt v. Leonhardt, 102 Mo. App. 38; Odenwaelder v. Schorr, 8 Mo. App. 458; Cravens v. Faulconer, 28 Mo. 19; Grimm v. Tittman, 113 Mo. 56; Walton v. Kendrick, 122 Mo. 504; Borland's Law of Wills and Administration, pp. 34, 35.

*J. T. White* for respondents.

(1) No particular form is necessary for a will. It may be in the form of a letter or other informal document. It is only necessary that it show *animus testandi*. 1 Underhill on the Law of Wills, p. 51, sec. 42; 40 Cyc. Law and Pro. 1092; Bayley v. Bailey, 59 Mass. 245, 259, 260, 261; Clark v. Ransom, 50 Cal. 595; In re Skerrett, 8 Pac. 181, 67 Cal. 588; Byer v. Hoppe, 61 Md. 206; Corney v. Knapp, 42 N. J. L. 297. (2) In order that an instrument may be written *animus testandi* so as to make it operative as a will, it is not

necessary that it should show in formal terms that it was intended as a will; it is only necessary to show the testator intended it to have a testamentary effect. 30 Encyl. of Law, 572; 40 Cyc. of Law and Pro. 1100; Johnson v. Yancy, 65 Am. Dec. 646; Bofter v. Rogers, 52 Am. Dec. 680. (3) In order that a will may be sufficiently "published" and attested it is not necessary that the testator should formally and verbally declare to the witnesses that the instrument is his last will and formally request them to witness it as such. It is entirely sufficient if the witnesses sign with his knowledge and consent and if they know the contents of the instrument they witness. R. S. section 537. Martin v. Bowdern, 158 Mo. 379, 389; Schierbaum v. Scherme, 157 Mo. 6; Hughes v. Rader, 183 Mo. 630; Grimm v. Tillman, 113 Mo. 56; Lindsey v. Stephens, 229 Mo. 600, 616; Avaro v. Avaro, 235 Mo. 424. (4) Mrs. Steffy was a competent witness to the will, although one of the heirs of the testator, and having a possible beneficial interest in the estate if it should be established. R. S. 1909, secs. 570, 574, 577; Grimm v. Tillman, 113 Mo. 56; 1 Underhill on Wills, p. 264. (5) She would have been competent without the renunciation under sections 570 and 577, and in any event she was made competent by the renunciation under sec. 574.

ROBERTSON, P. J.—On March 5, 1910, Richard McDonough, an aged bachelor, made his will devising all of his property to his nephew and appointing one Wm. H. Horine, of Springfield, Missouri, his executor. On May 21, 1910, he made a codicil thereto, in which he provided that any indebtedness which he had against his niece, Mary A. Steffy, should be released and discharged and any evidence of indebtedness in possession of his estate should be surrendered to and not charged against her. This niece and the testator had

lived a considerable portion of their time together or as neighbors. During the summer of 1911 the niece was living on a farm in Douglas county, Missouri, and the testator was at a hospital in Springfield. The niece traded her farm in Douglas county for a hotel in Neodesha, Kansas. On her way to Kansas she stopped at Springfield and visited her uncle, whom she met at Holland's Bank on Monday, June 19, 1911. He expressed a desire to go to some other place than where he was then stopping and she invited him to visit her, asking him to go with her at that time, but he said he could not get ready to go until later. While at the bank the testator said he had papers he wanted to get fixed before he went out with her and upon her asking what papers they were, he said: "I have a will drawn up and Horine has it and he is administrator and I want to get the papers and will Mr. Horine has." She went to Kansas returning to Springfield the latter part of that week and the testator went home with her, walking to the depot in Springfield, and was then in his normal state of health. He was subject to strokes of paralysis, and after he had been at Mrs. Steffy's hotel a short time he had another stroke of paralysis, and upon being helped into the hotel and into bed he stated that he wished Thomas Murphy, a brother of the niece, was there and she told him if he wanted her brother she would get him. She got into communication with her brother at some other point over the long distance telephone and he arrived there that evening at about five o'clock. The testator said he wanted the nephew to look after his papers, that he wanted him to go to Springfield, but the nephew advised him that it was unnecessary to go to Springfield, that the same object could be accomplished by writing. After being reassured by the nephew that such could be accomplished, the testator stated that it was all right, that he wanted to get his papers and the will

that Mr. Horine had. Then the nephew told the testator that there would have to be. two witnesses to what he wrote and the testator remarked that Mr. Arnold and his niece, Mrs. Steffy, would do for witnesses. Mr. Arnold was the former owner of the hotel and was yet occupying a room there and was one of the parties who assisted in taking the testator to his room at the time this stroke of paralysis occurred. Thereupon, at the dictation of the testator, the following instrument, the one in question here, was written by the nephew, on two sheets of paper:

Neodasha, June, 30-1911.

No. 1.

Mr. T. B. Holland, President Banking Co., Springfield, Mo.

Dear Sir:

I wish you would see Mr. Horine and ask for my papers that he has as I now declare and wish them to be null and void I will thank you in advance for troubling you by asking you again to secure those papers from Mr. Horine As I want Father Miles of St. Johns Church Springfield Mo To Administer my Estate.

No. 2

As I have secured his consent to the use of his Name as Administrator.

Written By my Nephew,

Thomas F. Murphy.

Richard McDonough,

By his mark X.

J. L. P. Arnold, Witness,

Mrs. Mary A. Steffy, Witness.

Thereupon the nephew called Mr. Arnold in, the niece being present during all of this time, and the nephew read this instrument over to his uncle in the presence of both of these witnesses, the uncle asking if that would cancel everything that Mr. Horine had, to which the nephew replied, "Yes;" and the uncle

then expressed his satisfaction therewith. The testator was assisted to his feet to enable him to make his mark on the paper and the witnesses then signed it. The mental capacity of the testator is admitted. No question of undue influence is involved.

The testator died July 9, 1911. Thereafter in the probate court of Greene county, Missouri, the first above referred to will and codicil were presented, proved and ordered admitted to probate. The instrument executed on June 30, 1911, as above set forth, was later presented to said probate court of Greene county but it was refused to be admitted to probate. Whereupon this action was brought by Thomas F. Murphy, William Murphy, Margaret E. Clancy, Mary T. Clancy, Anna Clancy and John Richard Clancy, as plaintiffs, against Thomas Clancy, Michael Clancy, Margaret Clancy, Thomas C. Walsh, Anna Walsh, John Walsh, a minor, Mary A. Steffy and William H. Horine, Executor, as defendants, seeking to have this last writing declared as the last will and testament of said testator and so admitted to probate, and seeking to have the first executed will and codicil, which had been admitted to probate, rejected and declared null and void. The testator owned no real estate at the date of his death.

The testimony disclosed that the first will was drafted by Mr. Horine but that he did not retain possession of it; that it was delivered to the testator who took it to Holland's Bank in Springfield. It appears that Mr. Horine was the regular attorney for the testator and attended to considerable business for him, but that the testator did not at any time leave the papers with him, but kept them in the bank. The testimony also discloses that there was no priest in Springfield by the name of Father Miles, nor had there ever been a Catholic church there known as St. John's Church. The hospital at which the testator had been stopping was St. John's Hospital, a Catholic institution, and a Fa-

ther Maurus of Springfield had transacted some business for the testator, who was a Catholic.

There was a jury trial and instructions were given at the request of the plaintiffs as follows:

"1. The court instructs the jury that this is an action to contest the will of Richard McDonough, dated March 5, 1910. It stands admitted by the plaintiffs that that will was duly executed by him at the time, and it is for the jury to say whether it is his last will, or whether it was revoked by the later instrument, dated June 30, 1911.

"If you believe from the evidence that the instrument dated June 30, 1911, was written by the direction of McDonough and his name was signed thereto at his request, and that Mary A. Steffy and J. L. P. Arnold signed the same as witnesses in his presence and understood its effect as explained in other instructions, then said instrument operated to revoke the will dated March 5, 1910, so that it was not his last will, and you will so find.

"2. You are instructed that if you believe from the evidence that the paper dated June 30, 1911, was written at the request of Richard McDonough and duly executed and witnessed in the manner and for the purpose as explained in other instructions, then the same was his last will, and had the effect to revoke his former will dated March 5, 1910, and if you so find from the evidence, you will answer that the instrument dated March 5, 1910, was not the last will of said Richard McDonough.

"3. In order that the instrument dated June 30th, 1911, should be properly witnessed, it was not necessary for Richard McDonough to verbally ask the witnesses to sign it. If the instrument was read to him and he understood its contents, and if the witnesses signed it in his presence and with his knowledge and consent, and said witnesses understood that said instrument was intended by said Richard McDonough to

revoke a former will, then it was properly witnessed.''

The court of its own motion instructed the jury as follows:

''4. In determining whether or not Richard Mc-Donough revoked his will of March 5, 1910, you must be controlled by his intention as expressed in the instrument of June 30th, 1911, and as shown by all the circumstances in evidence.

''5. You are instructed that the burden of proving that the instrument purporting to have been executed at Neodesha, Kansas, on June 30th, 1911, was executed by Richard McDonough, as and for his last will and testament, and duly attested as such, is upon the plaintiffs, Thomas Murphy and others; and unless you find and believe from the evidence that said instrument of writing was executed as and for the last will and testament of the said Richard McDonough, and signed as such by Thomas F. Murphy in his presence and at his request, and unless you shall further find and believe from the evidence that both the witnesses to said instrument, Mary A. Steffy and J. L. P. Arnold, signed said instrument at the request or suggestion of the said Richard McDonough, and that such witnesses were both informed by the said Richard Mc-Donough at the time of signing said instrument, that they were attesting the same as witnesses to his last will and testament, or unless you find from the evidence that the said witnesses knew from the contents of said instrument that it was intended by the said Richard McDonough to be his last will and testament, that is, that it was intended to revoke a former will, and to appoint an administrator of his estate after his death, then you will find the issues for the defendants.''

At the request of the defendants the following instructions were given:

''7. The court instructs the jury that under the evidence in this case and the pleading herein, and the admissions made by the plaintiffs in open court, the

instrument offered in evidence by the defendants, together with the codicil thereto, constitute the last will and testament of Richard McDonough, deceased, unless you shall further find and believe from the evidence, that the instrument ·purporting to have been made and executed at Neodesha, Kansas, on the 30th day of June, 1911, was not only duly executed, published and attested in the manner hereinafter set forth, in these instructions, but that it was also so executed, published and attested by the said Richard McDonough, with the intent on his part that the same should operate as a revocation of the said last will and testament and the codicil thereto.

"The court instructs the jury that unless you find and believe from the evidence that the instrument bearing the date of June 30, 1911, and offered in evidence by plaintiffs was executed by Richard McDonough, as and for his last will and testament, with the intent and for the purpose of revoking his former will and codicil thereto, which were offered in evidence by the defendants, that you will find the issues in favor of the defendants.

"And in determining this question you must find that both of the sheets which were so offered in evidence, were prepared and executed, at the time when it is alleged that they were executed, to-wit, on June 30, 1911, and the burden of proving that fact is upon the plaintiffs."

The jury found that the instrument executed at Neodesha, Kansas, was the last will and testament of Richard McDonough, upon which judgment was entered, the judgment also revoking the previous will and ordering that this latter instrument stand as admitted to probate. The defendants appealed.

After the instrument dated June 30, 1911, was signed it was not delivered to the party to whom it was addressed but was retained at Neodesha until after the death of the testator when it was delivered to the

probate judge of Wilson county, Kansas, evidently under the impression that it should be there probated.

The descendants of the said testator are admitted to be as alleged in the plaintiffs' petition as follows:

"Plaintiffs further say that said Richard McDonough was unmarried, died without issue and left no brothers or sisters living at the time of his death; that neither his father nor mother were living at the time of his death; that said Richard McDonough never had any brothers and had originally had four sisters, Margaret, Mary, Ann and Bridget, of whom the first two died without issue before the death of said Richard McDonough; that his sister Ann, having married one Clancy, died before the death of said Richard McDonough, leaving five children, Peter, Mary, Margaret, Thomas and Michael, of whom the last three named are defendants herein; that Peter Clancy, the son of Ann Clancy, died before the death of Richard McDonough, leaving four children, Ann Clancy, Mary T. Clancy, Margaret E. Clancy and John Richard Clancy, which last four named are plaintiffs herein; that said Richard McDonough's niece, Mary Clancy, married one Walsh and died before the death of said Richard McDonough, leaving three children, Anna Walsh, Thomas C. Walsh and John Walsh, a minor, who is under the age of twenty-one years, which last three named are defendants herein; that Richard McDonough's remaining sister, Bridget, married one Murphy and died before the death of said Richard McDonough, leaving three children, now living, of whom Thomas F. Murphy and William Murphy are plaintiffs herein and Mary A. Steffy is a defendant."

When Mrs. Steffy was placed upon the stand as a witness in behalf of the plaintiffs the defendants objected on the ground that she was incompetent, whereupon the plaintiffs offered in evidence her renunciation theretofore executed and acknowledged. The defendants then further objected, "because under the

pleadings and under her testimony in this case she is not a competent witness in this case and we object to the instrument offered in evidence purporting to be a renunciation of her rights for the reason that *there are no rights conferred upon her by the will*, the effect of it, if it has any, being simply to revoke the former will.'' The witness then proceeded with her testimony.

The appellants submit the following points in their brief: (1) that Mrs. Steffy was incompetent as a witness and was not rendered competent by the alleged renunciation; (2) that the testimony introduced by respondents in opening their case upon any other issue except the mental capacity of the decedent, and the due execution of the instrument which they claim to be a will, was wholly incompetent; (3) that verbal testimony introduced for the purpose of aiding in the interpretation of the alleged will, and especially in contradiction of its terms, was wholly inadmissible; (4) that all testimony as to statements made by the decedent relative to his intentions concerning the execution of the alleged will was incompetent and immaterial; (5) that the will should not have been admitted in evidence because it does not purport to be a will upon its face, was written upon separate sheets of paper not so attached as to constitute part of the same instrument, and was not sufficiently identified as a part of the original instrument; (6) that the witness Arnold was not informed prior to and at the time of signing the paper that he was attesting a will; (7) that under the testimony it was evident that the instrument after being executed was not deposited in the mails properly addressed to the person for whom it was intended, but remained in the custody of the nephew, and, thereafter, instead of being brought or mailed to the person for whom it was intended it was taken to the judge of the probate court of Wilson county, Kansas, and there deposited; (8) that the undisputed testimony in this

case shows clearly that the original will was not in the possession of Mr. Horine at the time this instrument was written, but that the testator himself had deposited it with Mr. Holland at his bank; (9) that the instructions given by the court of its own motion and at the request of the plaintiffs should have been denied, not only for the reason that they do not properly declare the law, but for the further reason that they assume the very salient fact that was not established in evidence, which is, that the witness Arnold knew that the instrument was testamentary in its character; (10) that the court should have given the appellants' peremptory instruction and should have given instruction No. 9 requested by the defendants; (11) that upon the whole record the judgment is for the wrong party and should be reversed.

If, as the defendants stated in the objection to the competency of Mrs. Steffy, called to our attention by their first point, "there are no rights conferred upon her by the will," referring to the instrument in controversy, then, under section 570, Revised Statutes of 1909, she was not incompetent; but, conceding that the defendants can be heard now to assert the contrary, she rendered herself competent under section 574, Revised Statutes of 1909, by executing the renunciation. [Grimm v. Tittman, 113 Mo. 56, 62, 20 S. W. 664.]

The second point made by the appellants does not appear to be well founded for the reason that there appears to have been no objections made at the time to the order of the proof, neither is there any such assignment in the motion for a new trial; either of which would foreclose the right of the appellants to now insist thereon.

The appellants are barred from any right to consideration of their third point by instructions No. 4, given by the court, "to which no objection was offered," according to the statement contained in the record, as that instruction recognizes the right of the

jury to not only consider the language of the instrument *but also all of the circumstances in evidence.* Although it appears from the authorities that there is almost an endless confusion in the decisions upon this point, we take it to be well settled in this state at least that as to latent ambiguities parol testimony may be offered and that the defendants properly withheld any objection to that instruction. [Willard v. Darrah, 168 Mo. 660, 68 S. W. 1023; McMahan v. Hubbard, 217 Mo. 624, 118 S .W. 481.] Besides we fail to find any testimony which tends to contradict the will in any of its essential features. The errors in the will as to the location of the first will and as to the name of the church and the priest are not contradictions that go to the gist and essential features of the will.

As to the fourth point, we cannot find anything in the record that is a basis therefor. When any testimony was offered by the plaintiffs, which might otherwise have been construed as being intended for this purpose, it was stated to be solely for the purpose of showing what papers Mr. Horine had. All of such testimony was offered and could have been understood to be only for the purpose of identifying the papers to which reference was made in the will as, it being the desire of the testator, should be null and void.

Appellants' fifth point is leveled at the form of the instrument. The absence of formal parts of an instrument is not fatal to the disclosure of a testamentary intent upon the part of the person who executed it. There are numerous authorities cited by the respondents in which documents much less formal than this one were held sufficient. In the case of Bayley v. Bailey, 59 Mass. 245, the following was held to be a will:

West Troy, July 31, 1848.

Mr. Joseph C. Bailey: It is my wish that the will I made be destroyed, and my estate settled according to law.

R. W. BAYLEY.

In presence of Joseph Bates, Esther G. Bates.

In Clarke v. Ransom, 50 Cal. 595, a letter reading as follows was admitted to probate as a will:

Mayfield Grange, Tuesday, June 23, 1874.
Dear old Nance:

I wish to give you my watch, two shawls and also five thousand dollars.
Your old friend,
E. A. GORDON.

We have been cited to no cases in this state which involve facts at all similar to those in this case, and, consequently, if we are to fortify our holding by authorities it must be by citation of decisions from other states. In the *Clarke* case, supra, it was contended that there was nothing on the face of the writing to indicate that it was intended to be testamentary, nor was there any reference to the anticipated death of its author. Testimony was admitted, however, as to the surrounding circumstances to prove who was intended by "Dear old Nance," and that she and the author had been on terms of intimacy for years, that the author of the writing was a widow, with a large estate, and without children, that she had before executed a will in due form by which she had devised to her brother the whole of the estate, except for several specific legacies, one of which was to the party to whom this writing was addressed. In the course of the opinion, it is said: "If it shall appear under all of the circumstances that the instrument was intended to be testamentary, the court will give effect to the intention, if it can be done consistently with the language of the instrument; and in such cases the particular form of the instrument is immaterial."

We may digress here somewhat to remark that the fact that the testator in the case at bar erroneously supposed that Mr. Horine had possession of the previous will, and that there was a St. John's Church and a Father Miles in Springfield, we think detracts noth-

ing from the testamentary character of the writing. It is important, however, that the testator in this instrument referred to the party he supposed had the will and referred to a person he supposed existed whom he desired to act as administrator of his estate, because, while he was in error on these points, it served the purpose of disclosing his intention. That the testator thought that his will was with Mr. Horine, there can be no doubt, and, in view of the verdict of the jury, we can express none. That being the case, his testamentary intent and purpose is expressed and disclosed as fully when he speaks of that document with reference to its being in Mr. Horine's possession as though it were in fact there. The fact that he was mistaken about its location could in no manner cast any doubt upon the matter of his intention. He expressly stated that he "desires them to be null and void," and so declares. The fact that he refers to a priest and a church that did not exist in Springfield, Missouri, does not detract anything from the weight to be given to the subject of administration on his estate, as indicative of the existence in his mind of a desire to affect the disposition of his property after his death. This is one of the incidents that corroborates the theory of the proponents of this instrument as his will that at the time he executed it he intended it as his last will and testament. His intent and purpose is disclosed on the face of the writing as clearly by an erroneous reference to individuals as if the reference had been accurately made. There is no contention that there were any other wills to which he intended to refer.

The further contention in the fifth point that the instrument was written on separate sheets of paper and were not properly identified will not be entertained in view of the abundant testimony identifying them as the original sheets, and the verdict of the jury, under specific instructions upon that point in the latter

part of instruction No. 8, given at the request of the defendants.

The sixth point of appellants is fully answered by the testimony and the verdict of the jury under the instructions given. It was proper for the jury to consider all that was said and done by the testator in the presence of the witnesses at the time and all of the facts and circumstances immediately connected therewith, whether immediately before or immediately after they signed their names as witnesses. [Grimm v. Tittman, 113 Mo. 56, 65, 20 S. W. 664.] Mr. Arnold was procured as a witness at the instance of the testator and with the other witness heard the instrument, which bore upon its face evidences of a testamentary intent, read to the testator. This dispensed with the necessity of a formal request from the testator and the declaration that it was his will. [Schierbaum v. Schemme, 157 Mo. 1, 7, 57 S. W. 526; Martin v. Bowdern, 158 Mo. 379, 389, 59 S. W. 227.]

The appellants cite no authorities and advance no arguments in behalf of their 7th, 8th, 9th, 10th and 11th points. As to the 7th one, we are unable to determine why the intent of the testator should be defeated because the instrument signed by him was not sought to be enforced until after his death. The instrument being a will it became effective to revoke the former will and codicil upon the death of the testator irrespective of what had been done with it, or into whose possession it had been placed, by others, without his direction. And even if it had been transmitted to the party to whom it was addressed by the testator and if the papers therein referred to had been delivered to the testator, it could have added nothing to the intention of the testator as expressed in the writing, nor have been of any benefit to him, other than to have enabled him to destroy the first will and codicil and thereby have removed an element for doubt as to their revocation. There is nothing in the record that

discloses that the failure of the testator to see that the instrument was delivered to the addressee was brought about on account of any action or nonaction on his part. He did all that he was able to do. He procured the assistance of his nephew who accomplished his desire in the way of making his will and revoking the prior will and codicil.

What has been said above disposes of the 8th, 9th, 10th and 11th points of the appellants adversely to them.

The court did not err in refusing defendant's requested instruction numbered 9, referred to in their 10th point, since it hypothetically submitted facts properly incorporated in other instructions given.

Believing that the contentions of the appellants do not justify a disturbance of the judgment of the trial court, we shall not molest it. Affirmed. *Sturgis, J.,* concurs. *Farrington, J.,* not sitting.