Kenneth BRECKNER, Executor Under the Last Will and Testament of Ruth Margaret Quinn, A/K/A Ruth Quinn, Ruth M. Quinn, Deceased, dated March 14, 1975, Plaintiff-Respondent,

v.

Julia Alyson PRESTWOOD et al., Mrs. Ada Strayhorn Cain, Defendant-Appellant,

Delmar Baptist Church, Defendant-Respondent,

Missouri Baptist Children's Home, Defendant-Respondent,

Home for Aged Baptists, Defendant-Respondent,

The Salvation Army of St. Louis, Defendant-Respondent.

No. 40281.

Missouri Court of Appeals, Eastern District, Division Four.

March 25, 1980.

Motion for Rehearing and/or Transfer to Supreme Court Denied May 19, 1980.

Lewis, Rice, Tucker, Allen & Chubb, Henry F. Luepke, Jr., Andrew Rothschild, St. Louis, for defendant-appellant.

Frank Susman, Barbara L. Beran, Susman, Schermer, Willer & Rimmel, St. Louis, for Delmar Baptist Church.

Richard O. Roberts, St. Louis, for Salvation Army.

Jay G. Newquist, St. Louis, for Kenneth Breckner.

SATZ, Judge.

This case involves a construction of two provisions of the Last Will and Testament of Ruth Quinn, Deceased. Appellant, Ada S. Cain, and Respondents, Delmar Baptist Church, Missouri Baptist Children's Home, Home for Aged Baptists and The Salvation Army of St. Louis, are named beneficiaries in the will. The will was drafted by an attorney. The attorney and Mrs. Quinn had been employed by an insurance company for approximately 30 years, and, during 4 of those years, Mrs. Quinn was the attorney's secretary. She retired in 1971. The attorney left the insurance company, became affiliated with a law firm in 1972 and was working there when Mrs. Quinn asked him to draft her will. The attorney and a Kenneth Breckner were named as co-executors, and the attorney resigned as co-executor shortly after his appointment. As executor, Mr. Breckner filed a petition to construe the will which has conflicting clauses. As named beneficiaries, appellant and respondent charities are among the defendants in that action.

The two provisions of the Quinn will which are conflicting concern the disposition of Mrs. Quinn's intangible and tangible personal property. Item Second of the will provides:

All articles of household furniture and furnishings, books, pictures, silverware, my automobiles, all of my clothing and jewelry, not otherwise disposed of, and all similar articles of household use and wearing apparel *and any and all personal property* which I may own at the time of my death, I give and bequeath unto my aunt, MRS. ADA STRAYHORN CAIN, . . . , or to her descendants, per

stirpes, if my said aunt shall predecease me. [Emphasis Added].

Item Eighth states:

I give, devise and bequeath all the *rest, residue and remainder of my property, both real and personal, and of every kind and description*, wherever the same may be situated, in equal shares to DELMAR BAPTIST CHURCH, . . . ; MISSOURI BAPTIST CHILDREN'S HOME, . . . ; HOME FOR AGED BAPTISTS, . . . ; and THE SALVATION ARMY OF ST. LOUIS, . . . . [Emphasis Added].

As can be seen from the underlined portions, the will contains a patent ambiguity because both Item Second and Item Eighth of the will seemingly bequeath the same personal property to different beneficiaries.

To resolve this ambiguity, the entire probate file was admitted into evidence without objection. The probate inventory showed that Mrs. Quinn's estate contained stocks, bonds and cash valued at $199,295.00, in addition to furniture, household goods, wearing apparel, jewelry and real estate.[1] The remaining evidence consisted primarily of the testimony of the scrivener, the attorney who drafted the will, and, apparently, by agreement between the parties, counsel for the respondent Baptist charities objected to the entire testimony of the scrivener. Although not explicitly stated, the court apparently reserved its ruling on this continuous objection, and, in its Findings of Facts and Conclusions of Law, the court excluded all of the scrivener's testimony from consideration, although it is not clear whether the court excluded this testimony because it was inadmissible, or, because it was admissible, but not credible. In addition, written correspondence between the scrivener and the beneficiaries was offered by appellant to corroborate the

---

1. As reported in the First Amendment Inventory, Mrs. Quinn's estate consisted of the following:

   1. Residence at 7326 Princeton, University City, Missouri    $ 30,000.00
   2. Furniture, household goods, wearing apparel    3,070.00

| | | |
|---|---|---|
| 3. | Corporation Stocks | 95,909.12 |
| 4. | Mortgages, bonds and notes | 22,430.10 |
| 5. | Bank account, insurance policies and money | 80,956.11 |
| 6. | Other personal property | 2,695.00 |
| | TOTAL | $235,060.33 |

scrivener's testimony concerning his understanding of Mrs. Quinn's testamentary intent.[2] The respondent charities' objection to these letters was sustained and the appellant's offer of proof overruled.

The trial court entered judgment for the charities, ruling that personal effects similar to those specifically designated in Item Second passed to Appellant Cain and, other than certain cash bequests, the remainder of the testatrix's personal property passed to the charities under Item Eighth. We affirm.

Three of appellant's four points on appeal concern the admissibility of the scrivener's testimony about the testatrix's declaration of her testamentary intent. More specifically, appellant's principal argument is that evidence of the testatrix's declarations of intent was admissible and that the trial court erroneously concluded this evidence was inadmissible and rejected it. As noted, the particular ground used by the trial court to reject the scrivener's testimony is not clearly reflected in the record. However, that is not material here, for we find the scrivener's testimony concerning the testatrix's declarations of her testamentary intent was inadmissible and, thus, the rejection of this testimony by the trial court was proper, regardless of the grounds used by the court. *See, In re Estate of Katich*, 565 S.W.2d 468, 470 (Mo.App.1978).

■■■■ The evidentiary rules which have been developed permitting or excluding extrinsic evidence to aid in the interpretation of a will depend, in large measure, on whether the interpretation is of a patent ambiguity or of a latent ambiguity. A patent ambiguity is one which is apparent on the face of the will. A latent ambiguity occurs when the will is unambiguous on its face but becomes open to more than one interpretation when applied to the particular factual situation before the court. *See Citizens Nat'l Bank v. Hanes,* 541 S.W.2d 70, 71–72 (Mo.App.1976). Generally speaking, there are two types of wills that present latent ambiguities. One type explicitly describes a person or thing, and two or more persons or things fit exactly the description or condition in the will. *E. g., Willard v. Darrah*, 168 Mo. 660, 68 S.W. 1023, 1024 (1902). The other type exists when no person or thing fits the description or condition in the will, but two or more persons or things do fit the description or condition, in part, and imperfectly. *See, Schubel v. Bonacker*, 331 S.W.2d 552, 556 (Mo.1960); *Stuesse v. Stuesse*, 377 S.W.2d 389, 392 (Mo.1964); *Bond v. Riley*, 317 Mo. 594, 296 S.W. 401, 404 (1927).

■■■■ Extrinsic evidence of circumstances in a testator's life are admissible to help resolve these latent ambiguities. The type of extrinsic evidence contemplated is evidence of objective, operative facts, *Willard v. Darrah, supra; see also Bond v. Riley, supra*, which give precise and explicit meaning to the language used by the testator and, thus, compel a clear inference of the testator's exact intent. *In re Aiken's Estate*, 5 S.W.2d 662, 664 (Mo.App.1928). Thus, extrinsic evidence of the intimate and friendly relationship of the testator and his grandsons was admitted to show the testator intended a bequest to be made to his grandsons rather than his grandnephews, although the grandsons as well as the grandnephews carried the names of the legatees named in the will. *Willard v. Darrah, supra* at 1024. This evidentiary rule may also be used to aid in the interpretation of a patent ambiguity in a will and, thus, where a patent ambiguity exists, extrinsic evidence is admissible to determine the amount, nature, extent and condition of a testator's property, his relation to or association with persons having an interest in his property, any motives which could have actuated the testator, and the persons who were the natural objects of his bounty. *Lehmann v. Janes*, 409 S.W.2d 647, 653–654 (Mo.1966).

---

**2.** This correspondence consisted of six letters. Three of the letters were written to Ella M. Alexander, the daughter of appellant Ada Cain, by the scrivener. The fourth was a letter from Ella M. Alexander to the scrivener. The fifth and sixth were letters from an attorney in the scrivener's law firm, one to appellant Cain and the other to respondent Salvation Army.

However, this type of extrinsic evidence does not include evidence of the testatrix's declarations about her intent, and generally evidence of a testatrix's statements concerning her intentions, whether made before, at the time of, or subsequent to the execution of her will is not admissible to construe the will. *E. g., Evans v. Volunteers of America*, 280 S.W.2d 1, 5 (Mo.1955). The intentions of the testatrix must be gleaned from the will because those intentions were reduced to writing and she, being dead, could not dispute proffered evidence of intent. *Aurien v. Security Nat'l Savings & Trust Co.*, 137 S.W.2d 679, 684 (Mo.App.1940). Moreover, such evidence violates the Statute of Wills, *Winkel v. Streicher*, 365 Mo. 1170, 295 S.W.2d 56, 59 (banc 1956) and is susceptible to perjury. *4 Page on Wills*, § 32.9 at 271 (1961). Nonetheless, in spite of these real and possible dangers, an exception has been developed for latent ambiguities, and a testatrix's declarations of intent are admissible to explain latent ambiguities. *Evans v. Volunteers of America, supra; American Cancer Society, Mo. Div., Inc. v. Damon Runyon Memorial Fund for Cancer Research, Inc.*, 409 S.W.2d 222, 224 (Mo.App.1966). The rationale supporting this exception is that the designation in the will which gives rise to a latent ambiguity is itself an explicit name of a beneficiary or an explicit description of property, and evidence of the testator's declarations of intent does not add to or replace this explicit designation but merely gives the designation the precise meaning intended by the testator. 94 A.L.R. 26 at 277, *Admissibility of Extrinsic Evidence to Aid Interpretation of Will* (1935). Comparable reasoning has not been applied to patent ambiguities, and evidence of declarations of intent made by the testator are still inadmissible and cannot be used to resolve a patent ambiguity in a will. *E. g., In re Estate of Katich, supra* at 470; *Aurien v. Security Nat'l Savings & Trust Co., supra* at 684.

As noted, it is clear that the Quinn will contains a patent ambiguity since, on its face, both Item Second and Item Eighth of the will bequeath the same personal property to different beneficiaries. Because the will contains a patent ambiguity, the testimony of the scrivener as to the declarations of the intention of the testatrix was properly rejected by the trial court. A small part of the scrivener's testimony did describe the relationship and feelings of the testatrix to appellant Cain. Our Supreme Court has held that "[t]estimony of the relationship of the parties and the testatrix's feelings toward them [is] not error" in resolving a patent ambiguity because, according to the Court, such testimony does not contain statements of the testatrix's intentions. *Obetz v. Boatmen's Nat'l Bank*, 234 S.W.2d 618, 625 (Mo.1950). But the scrivener's testimony here as to the testatrix's relationship and feelings, if admissible, was, as it was in the *Obetz* case, "of very little, if any, probative value". *Id.* at 625.

The other extrinsic evidence rejected by the trial court was, as noted, letters written by the scrivener, by an attorney in his office, and one letter received by the scrivener. These letters merely reflected, in writing, opinions as to the testatrix's testamentary intent. The fact that the testatrix's declarations of her intent were interpreted and reflected in the scrivener's written correspondence made the declarations of intent in the letters no more admissible than the declarations would be if the scrivener had attempted to state his understanding of her intent at trial. Thus, the trial court properly excluded these letters.

Thus, under the present rules of evidence, we are constrained to affirm the trial court's rejection of extrinsic evidence of the testatrix's declarations of intent to resolve the patent ambiguity in question. However, the rationale for admitting a testatrix's declarations of intent to resolve a latent ambiguity applies with equal sense and force to the resolution of a patent ambiguity, and, conversely, the dangers of justifying the exclusion of a testatrix's declarations to resolve a patent ambiguity exist with equal force in the resolution of a latent ambiguity. Moreover, the catego-

rization of an ambiguity as latent or patent is not exact, precise or explicit and the two categories, at times, seemingly overlap. Were we not constrained to follow the rules of evidence peculiar to patent ambiguities in a will, we would, as appellant urges, make admissible here the scrivener's testimony of the testatrix's intent.

■ Appellant also contends that the scrivener admitted that the word "personal" "slipped in" to Item Eighth and that, in hindsight, he would not have used it in Item Eighth and, because of this "admitted mistake", appellant argues, extrinsic evidence —namely, the scrivener's testimony of the testatrix's declaration of intent—was admissible to correct the mistake. As we read the present transcript, the scrivener's testimony about his "mistake" was subject to the respondent charities' continuous objection. However, if his testimony that he made a "mistake" were in evidence, appellant seeks to correct this mistake by changing the will to conform to the scrivener's description of the testatrix's intentions and instructions. We have ruled, albeit unwillingly, that evidence of the testatrix's declarations of her intent was not admissible, and such evidence is not admissible to show a scrivener's mistake or to correct it. *Accord, 4 Page on Wills*, § 32.9 at 270 (1961).

In addition, appellant contends that the trial court erred and ignored the unique facts of this case as revealed by the extrinsic evidence which was rejected. The unique facts to which appellant refers consisted of the testatrix's declarations, which were inadmissible.

Finally, appellant complains that the trial court erred in using the rule of ejusdem generis to construe the conflicting clauses of the will rather than relying on the evidence of the testatrix's statements of intent. We have determined that evidence of the testatrix's declarations was inadmissible and, thus, the only question which remains is whether the rule of ejusdem generis was

properly applied by the court. We find the trial court made proper use of the rule.

■ Simply stated, the rule of ejusdem generis suggests that general words following the enumeration of words of specific meaning are not to be construed in their widest extent but only as applying to those things of the same kind, nature or class as those specifically enumerated. *Phoenix Assur. Co. v. Royale Investment Co.*, 393 S.W.2d 43, 47 (Mo.App.1965). The rule is not absolute. It is simply an aid to construction. The issue which the trial court resolved by the use of this rule was, as noted, whether the phrase personal property, as used in Item Second of the will, included all of the testatrix's personal property, i. e., her stocks, bonds, certificates, bank accounts, cash and the like, remaining after her specific bequests of her personal effects, or, whether the remainder of this personal property passed under Item Eighth to the charities by the phrase "all the rest, residue and remainder of my property, both real and personal, and of every kind and description".

■ Item Second of the will provided for specific bequests to three different legatees in three different paragraphs.[3] The first paragraph bequeathed a bracelet to Julia Alyson Prestwood. The second paragraph bequeathed two watches and two cocktail rings to Mrs. Virginia Priesmeyer, or to Mrs. Martha Lyngaas if the former be deceased. In the third paragraph, the testatrix bequeathed her household furniture and furnishings, books, pictures, silverware, automobiles, clothing, remaining jewelry, "and all similar articles of household use and wearing apparel and any and all personal property" which she owned at the time of her death to appellant. Item Third devised real property located in Tyler, Texas to Mrs. Ella Marie Cain Alexander, the daughter of appellant. Items Fourth, Fifth, Sixth and Seventh bequeathed $5,000 each to four different named legatees.

---

**3.** A certified copy of the Quinn will was not presented as an exhibit to this court. The Circuit Court took judicial notice of its probate file in this matter, but that was not forwarded to this court. The only copy of Mrs. Quinn's will available to the court is Exhibit A which was attached to plaintiff's petition and incorporated therein by reference.

Item Eighth was the residuary clause in question.

The specific bequests in the first two paragraphs of Item Second were valuable items of a personal nature worn by the testatrix. The enumerated articles in the third paragraph of Item Second, one of the paragraphs in question, were items surrounding testatrix in her home and used by her there. All three paragraphs include bequests of tangible property closely associated with testatrix in an intimate way. Thus, with this language immediately preceding the phrase "and any and all personal property", it is sensible to conclude the testatrix intended to use the phrase in Item Second as a residuary clause only for the remainder of her personal, tangible, intimate goods. Moreover, if the testatrix intended this phrase to bequeath to appellant not only all of her tangible personal effects, but also all of her intangible personal property remaining after her specific bequests in the first two paragraphs of Item Second, as appellant contends, then there was no need for the testatrix to make the specific bequests of personal property she made to appellant immediately preceding the phrase in question, for all of the specifically designated personal property would have passed to appellant under the phrase "and any and all personal property" owned at the time of the testatrix's death. Furthermore, the testatrix did follow Item Second with specific cash bequests in Items Fourth, Fifth, Sixth and Seventh. To accept appellant's argument that the term personal property in Item Second included the remainder of testatrix's tangible and intangible personal property, and thus included cash, would render Item Fourth through Seventh nugatory. Arguably the remaining real property could be sold in order to satisfy these cash bequests, but appellant does not suggest this strained construction to be testatrix's intent. Testatrix evidently had a scheme of specific bequests in mind which disposed of her personal, intimate items of adornment and household effects and cash in Items Second and Items Fourth through Seventh, and the remaining real and personal property was to pass, as the trial court found, to respondent charities. Finally, although legal precedents are of little value in will construction cases because two wills seldom contain identical language, our courts do construe the phrase personal property to mean tangible items of a personal nature, excluding intangible personal property of the type in issue here, particularly where the language in issue and the structure of the will is similar to the language in issue and structure here. *See e. g., Obetz v. Boatmen's Nat'l Bank, supra; Fishman v. Keating,* 542 S.W.2d 314 (Mo.App.1976). Thus, the trial court's interpretation of the present will not only fits the specific language used in the context of the entire will, but that interpretation also fits comfortably within the import of the construction of wills which have used similar language.

We reach our decision based upon our understanding of the present status of law which makes the testatrix's declaration of her testamentary intent inadmissible to help resolve a patent ambiguity in a will. However, our courts have carved out an exception to this rule and permit evidence of the testator's declarations of intent in the case of latent ambiguities, and we see no real reason not to treat patent ambiguities in the same way. The dangers against and the benefits derived from the use of the testator's declarations of intent in resolving a latent ambiguity would exist to the same degree and effect if those declarations were used to resolve a patent ambiguity. Therefore, if the conclusion is first reached that, because of an ambiguity, extrinsic evidence is proper to aid in arriving at the testator's intentions, we find no real basis for excluding extrinsic evidence of the testator's intention, regardless of whether the ambiguity is latent or patent. However, as noted, we are constrained to follow the rules of evidence as they presently exist. Accordingly, we affirm the order and judgment of the trial court.

DOWD, P. J., and CRIST, J., concur.