LAURA BELLE STEPHENS COLEMAN, Appellant, v. VIRGINIA HAWORTH ET AL., Appellants.—8 S. W. (2d) 931.

Division Two, July 20, 1928.

854

*Katherine Halterman* and *William B. Skinner* for appellant.

*H. A. Gardner* for respondents.

WHITE, P. J.—This action is brought to construe the will of John Henry Stephens. The plaintiff is his only daughter, and so far as the record shows his only living relative.

The will of Stephens was executed in June, 1921, admitted to probate in Lawrence County, in December, 1922. His widow, Louise G. Stephens, died intestate, May 25, 1923, leaving the plaintiff Laura Belle Stephens Coleman as her only child and heir at law. The construction of the will determines the title to certain real estate in Lawrence County, described in the petition. The will is as follows:

"I, John Henry Stephens of Lawrence County, Missouri, declare this to be my last will and testament.

"1st, I bequeath and give to my daughter Laura Belle Stephens Coleman, One Thousand ($1000) dollars in money.

"2nd, I devise and bequeath all the rest, residue and remainder of my entire estate both personal and real to my beloved wife, Louise G. Stephens, for her disposition and disposal during her lifetime.

"3rd. In the event of the death of my wife Louise G. Stephens, I request that all of my estate both personal and real that may be left, be converted into money and the money be invested in United States Government Bonds, and the bonds be placed in trust for the further carrying out of this will, in the Farmers and Merchants Bank in Long Beach, California.

"4th. I request and desire that all the interest due on said bonds be paid to my daughter Laura Belle Stephens Coleman during her lifetime.

"5th. In the event of the death of my daughter Laura Belle Stephens Coleman I request and desire that one-half ($\frac{1}{2}$) of the value of said Government Bonds mentioned herein be given to Virginia Haworth of Long Beach, California, and David Samuel Mayberry of Lawrence County, Missouri, or in the event of the death of either to their heirs, each of the two named herein to share and share alike equally in the one-half of said bonds.

"6th. I request and desire that the remaining one-half of Government Bonds be given to Louise Eshelman of Fort Smith, Arkansas, and to Louise Artella Douglass, of Okmulgee, Oklahoma, and to Louise Petty of Fort Smith, Arkansas, each one named to share and share alike equally in said one-half bonds.

"7. I request that my wife Louise G. Stephens be permitted to act as my executrix of this my will and that she be permitted to serve as such without being required to give bond. IN WITNESS

WHEREOF, I John Henry Stephens have to this my last will and testament, subscribed by name this 4th day of June, 1921.''

The claim of the plaintiff, appellant, is that John Henry Stephens devised all his property, including the real estate involved, to his widow, Louise G. Stephens, in fee simple, and the title thereupon came to the plaintiff by descent. It is the claim of the defendants that the will gave to the widow Louise G. Stephens only a life estate, with remainder to the plaintiff Laura Belle Stephens Coleman for life, with the remainder to the defendants in fee. The court so held.

I. Those who deplore technical rules and precision of statement required by the courts in interpreting legal documents, should consider the matter of wills. Of all written instruments, wills are the least formal. Anything written, in any form, goes for a will if it reveals the intention of the maker to dispose of his property at death. Yet wills cause more misunderstandings, more difficulties of interpretation, and more litigation than any other kind of writing; in discovering the intention of the maker, in reconciling his contradictions, in reducing to order his confused purposes. It is our task here to find the general purpose of the testator, to reconcile and coordinate provisions which may appear to be in conflict where such reconciliation and coordination can reasonably be made consistent with the general purpose, and, if the testator was confused in the expression of his desires, to pierce through such confusion and reduce to articulate terms the underlying intent. In doing so we must always keep in mind that the intention of the testator is the guiding principle; that his blood relatives, his heirs, are favorites of the law and entitled to first consideration in doubtful expressions; that a testator however clear of intellect cannot always foresee and provide for contingencies that may arise to hamper interpretation.

II. The first clause of the will gives Laura Belle Stephens Coleman one thousand dollars.

The second clause, which demands construction, is as follows:

''I devise and bequeath all the rest, residue and remainder of my entire estate, both personal and real, to my beloved wife, Louise G. Stephens, for her disposition and disposal during her lifetime.''

This clause, defendants claim, gave the widow a life estate only in the property, taken alone or in connection with the third clause.

The words, ''I devise and bequeath all the *rest, residue and remainder of my entire estate, both real and personal*, to my beloved wife Louise G. Stephens,'' it is conceded, if standing alone, would

convey to Louise G. Stephens a fee-simple estate in all the property. The use of several words to express the *total* of the residue emphasizes the testator's desire. That is followed by the words: "For her disposition and disposal during her lifetime."

Emphasis is placed by the defendants upon the expression "during her lifetime." It is argued that this expression cannot refer to the time in which she may make the disposition, but must qualify the estate granted; that she could convey or dispose of the property only for the duration of her life. Of course, she could not dispose of it except "during her lifetime," and the use of that expression as indicating the only time in which she was authorized to dispose of it is entirely superfluous, but tautology is a weakness not uncommon in legal documents. Grammatically the words "during her lifetime" qualify "disposition and disposal." If the words "during her lifetime" had come immediately after "my entire estate both personal and real" the limitation to a life estate would have been conclusive. The mention of duration is distinctly tied to the power of disposal. Still it is ambiguous; it might refer to either the time in which she could make disposition, or to the extent of the estate disposed of. It is in any case a phrase of doubtful significance, and should not be construed to limit the general power of disposition.

If standing alone Clause 2 would give to the widow a fee-simple title in the residue.

III. Where a life estate is expressly given, an absolute power of disposition will not be implied from expressions disposing of what is left. [Bramell v. Adams, 146 Mo. 1. c. 80.] And where a life tenant has the power of disposition and does not exercise the power during life, a limitation over to a remainderman takes effect. [Burnet v. Burnet, 244 Mo. 505.]

A fee-simple estate devised in express terms cannot be cut down or limited by subsequent disposition, unless the latter is as clear and decisive as the clause which granted the fee.

Section 551, R. S. 1919, provides that when the words "heirs and assigns" are omitted, and no expressions are contained in the will whereby it shall appear that such devise was intended to convey an estate for life only, "*and no further devise be made of a devised premises, to take effect after the death of the devisee*," it shall be understood to be the intention of the testator to devise absolutely, and a fee-simple estate would vest in the devisee.

The authorities give effect to the provision quoted in italics as if the fee-simple estate *implied* in an undefined grant might be limited by a later disposition in terms which reveals such intention of the

testator, though less explicit than terms required to cut down a fee simple *expressly* given.

In Burnet v. Burnet, 244 Mo. l. c. 505, this court, referring to that statute said, quoting from an earlier case:

"That statute, as heretofore pointed out, fully recognizes that a devise, which if standing alone should be construed as an absolute estate in fee simple, *might be limited to a life estate* by the use of expressions in the instrument which made it appear that such devise was intended to convey an estate for life only, or by *making a devise over of the devised premises to take effect after the death of the devisee first named.*"

That construction has been recognized in later cases.    [Tillerson v. Taylor, 282 Mo. 204.]

Some cases give effect to it. In Underwood v. Cave, 176 Mo. 1, the testator gave to his wife (l. c. 7, 8) "the residue of my lands, or so much thereof as may remain undisposed of at the time of my death." There a fee would result by operation of the statute, though no express words granting a fee are used. But the fourth clause of the will provided (l. c. 8) that the property "hereby bequeathed to my wife shall be hers *absolutely,* during her natural life to use and enjoy as she may see proper and *at her death,* if there should be *anything left,* my will is that it be vested and applied to the use of the Lone Jack Baptist Church." It was held that the language in the fourth clause limited the estate granted to a life estate, with power of disposition.

In Armor v. Frey, 226 Mo. 646, by several clauses the testator gave to his children certain property, using the words "I give, devise and bequeath." In a later clause he provided that "upon the death of my children without issue," other disposition was to be made of the property. It was held that the fee simple implied in the language first quoted was limited to a life estate by a subsequent clause.

In McMillan v. Farrow, 141 Mo. 55, l. c. 59, the testator gave all his estate, real and personal, to his wife, "to hold and enjoy by her absolutely with full power and authority to dispose of all or any part thereof at her option." A second clause provided that in the event of the death of the wife before or after the death of the testator, he made disposition of what remained undisposed of. It was held that she took a life estate and that the administrator of the deceased was entitled to possession as against the widow's administrators. In that case the grant came within the terms of Section 551.

In Gibson v. Gibson, 239 Mo. 490, the will gave all the testator's property to his wife, with power to dispose of as he might do if living, and at her death by will or before, if she elect, that she might divide the property among the children and grandchildren. It was held that she took a life estate with power of disposition.

.Some cases are cited as indicating a contrary doctrine applicable to this case.

In re McClellan Estate, 257 ·S. W. 808, the testator devised to his wife all of his property, real and personal, "to do as she desires with so long as she lives." Then follows a provision that at her death certain sums shall go to other persons. The opinion in that case held that the decedent by will gave the widow all the property in fee simple excepting that which was otherwise devised. It will be noted that two Judges dissented from the ruling, and three others concurred only in the result, so that no principle of law was announced in the case, but by concurring in the result the majority were obliged to hold that the wife could convey title to what she disposed of.

In Middleton v. Dudding, 183 S. W. 443, this Court en Banc had under consideration a will whereby the testator gave to his wife "as her absolute property" all his property, real and personal, and appointed her administratrix of his estate. Later he made a codicil and provided that should his wife die without a will, or without having disposed of the above property, then other disposition was made. It was held that the wife took a fee simple, that the will and the codicil were one instrument, and that the codicil was conditional, intended to operate only in case the wife died without having disposed of the property, but was ineffectual to cut down the fee-simple estate in the wife. The court indicates that the language of the will showed some confusion in the mind of the testator as to how to express his desire. The court there seems to give effect to the expression "as her absolute property," as having the force of a fee-simple grant.

In Lemp v. Lemp, 264 Mo. 533, the will of the testator gave his property to his wife, as follows: "I give, bequeath and devise to my wife, Julia Lemp, all my property, real and personal or mixed, wheresoever situate or by whatsoever title held, *absolutely*." There was a further provision that he made no gift to his grandchildren, but that he had perfect confidence in his wife to do the best for them. By another clause the testator mentions some property which he had purchased from other relatives, and indicated conviction that one of his grandchildren was reasonably secure in an adequate amount of property. It was contended that a trust was there created in a portion of the property. The court held that such construction would be inconsistent with the absolute fee given to the wife in the clause mentioned, and could not cut down nor diminish the fee. The word "absolutely" indicated an unqualified estate, and the language of the later clause was too indefinite to qualify the grant.

IV. This brings us to consider the third clause of the will, as follows:

*"In the event of the death of my wife,* Louise G. Stephens, I request that all of my *estate, both personal and real, that may be left, be* converted into money and the money invested in United States Government Bonds, and the bonds be placed in trust for the further *carrying out of this will* in the Farmers & Merchants Bank of Long Beach, California."

If the death of the wife is mentioned as an event certain to occur so that it should take effect after the death of the testator, then, under the authorities last cited her interest would be limited to a life estate, for such intention would be unmistakable. Appellant contends that the death is mentioned as an uncertain event, contingent upon its occurrence before the death of the testator. In that case the fee simple implied in the grant would not be limited to a life estate if she outlived the testator. Thus the construction turns upon the expression "in the event of the death of my wife," with which Clause 3 is introduced. If the words had been "on the death" or "at the death" or "when she dies" or some expression of that character, clearly it would have referred to death as a certainty, and the bequests following would have taken effect whenever that death occurred. But the expression "in the event," taken alone, indicates a contingency that the death should take place within a given time. The rule in relation to that is stated in Underhill on Wills, Section 342, and quoted many times in our Reports. It is as follows:

"Where there is an immediate gift in a will to A, and a disposition of property to another, *'in the case of his (A's) death'* or *'in the event* of his death' or with any similar expression referring to the death of A, not an event which is certain to occur but as a contingent event, no time being mentioned, the gift over will take effect only if A shall die *during the lifetime of the testator."*

Several cases in this State illustrate the principle in varying expressions indicating contingencies.

In Dameron v. Lanyon, 234 Mo. 627, after quoting the above passage from Underhill, the court said, l. c. 641:

"Therefore, when the testator in his will refers to the death of the primary beneficiary in words that indicate that the event he has in mind is an uncertainty, he is presumed to mean a death occurring before some other event, and if there is nothing in the will to indicate what that other event is, the law presumes that the reference is to the contingency of the death of the primary beneficiary before that of the testator. But if the will contains words that show that the testator's intention was to provide for a contingent remainder or executory devise, in the event of the death of the primary beneficiary occurring before some other event, which might occur after the death of the testator, then the presumption above mentioned is overcome,

and the testator's intention in that respect must govern, that is to say, if the event other than the testator's own death appears from the will, then we must say that the testator meant the death of the primary beneficiary before the occurrence of that other event.''

In Howard v. Howard, 184 S. W. 993, the expression was: ''and should said Augustus Howard die then (my) will is that his share of my estate be legally divided amongst his heirs.''

In Owens v. Men and Millions Movement, 296 Mo. 110, the expression was (l. c. 116) : ''It is my will in case my said daughter and son-in-law and granddaughter should all die without leaving any issue,'' other disposition was made.

In Northcutt v. McAllister, 249 S. W. 398, the provision of the will was (l. c. 399) : ''If either of these children die, the surviving to have all, and if both die to my other heirs.''

In Real Estate Company v. Megaree, 280 Mo. l. c. 50, the expression in the will was: ''In case of death of either of my children the share of such deceased child shall be transferred or paid to the heirs at law of such deceased child.''

In those cases we have varying expressions in wills, each indicating death as a contingency upon which a devise shall take effect, and in each of them it is held that the contingency of death means before the will becomes effective—that is, of course, usually the death of the testator.

But in no one of them was there a general power of disposition in the first taker, with an express devise of what might remain undisposed of.

It is suggested that the expression ''in the event of the death,'' which occurs three times in the will—in the third clause in relation to the death of the wife, in the fifth clause in relation to the death of the daughter, and in relation to the death of one of the other devisees—has the same significance in each case. That is, if it is not contingent in relation to the death of the daughter it is not contingent in relation to the death of the wife. The suggestion seems reasonable. But it is clear that it may not mean the same thing where it is mentioned twice in the fifth clause. Where it is mentioned last in the fifth clause it reads:

''In the event of the death of either, to their heirs,'' meaning of course to his or her heirs. The event in contemplation was apparently contingent upon the death of either of those devisees before the will took effect as to them. After the bequest should take effect in the devisees, on the death thereafter of the devisee, the property would go to the heirs by the Statute of Descents. Whereas, if the death occurred before the will should take effect it would not go to the heirs, but under Section 516 it would go to the lineal descendants,

and if there were no lineal descendants the legacy would lapse. So, that part of the will, to be effective, contemplated a contingency of death of one or the other of the devisees before the estate granted vested in them. Of course, that might occur before or after the death of the testator, depending upon the construction of the other clauses. Possibly the testator was not clear in his mind about the effect of his language.

The expression in the fifth clause, "In the event of the death of my daughter," would not be contingent upon its occurring before the death of the testator, for in that case it would do violence to a certain intention of the testator.

If that life estate in his daughter was contingent upon the death of his wife before his death, and the remainder over to the other devisees, after the death of the daughter, was contingent upon that death occurring before his death, she would have no life estate if she predeceased him. If she outlived him she would have that life estate, but the remainder after her death would be undisposed of.

A testator is presumed to have intended to dispose of all of his property where the will can be so construed. Assuming that the other devisees take on the contingency that the daughter die before the testator, no construction would allow a remainder to take effect after the daughter's death in case she outlived her father. So here we have one instance in which the expression shows a probable contingency in contemplation, and another in which it shows a clear certainty.

If "in the event of the death of my wife," means such death is contingent upon its occurrence before his death, and if the wife should outlive him, all the following clauses, 4, 5 and 6, would be wiped out. The limitation of the daughter's remainder to life would be ineffectual, for the daughter would acquire a fee simple by inheritance. It seems clear that he intended his daughter to have only a life estate, if she should outlive her mother; but again he may not have been clear in his mind about how to express his intention.

In arriving at the intention of the testator we must not overlook the character of the man as manifested in the disposition of his property. He was one of those testators who desires to project his control of his property as far beyond his death as the law would let him. He had the utmost confidence in his wife to care for the estate and preserve it. But for some reason not disclosed he did not have equal confidence in his daughter. He was careful that she should not have control of any part of the estate. It was to be funded and placed in the hands of a trustee, and the interest only paid to her for life. It is said by the trial judge in his ruling that she was the

only lineal descendant. It did not occur to the testator that she might have children. If it did he made no provision for it.

The power of disposition given his wife was not unlimited: she could make disposition "during her lifetime." He had in mind that she should not dispose of it by will, doubtless for fear that his daughter would thus acquire it without restriction or limitation. Then in the third clause, in the event of his wife's death, he requests that "*all of my estate* both personal and real *that may be left*," be converted into bonds and put into a trust fund. "All of my estate" —indicating his reluctance to release control of it. "That may be left"—after what? He had just given his wife all of his estate for her disposition during her lifetime. He immediately follows that in the next clause with the provision for all "that may be left." That could have no meaning unless it referred to what remained after the wife had made disposition of such as she desired. It is the part undisposed of by her. It could not refer to anything else preceding in the will. Thus the supposed contingency indicated in the words "in the event of the death of my wife" is converted into a certainty by the terms which show an express disposition of the property after that event and which must occur after his death.

While it is apparent that the testator overlooked contingencies that might arise in the disposition of his property, and while there was possible confusion in his mind as to how to express his desires in his endeavor to preserve his property as long as he could direct control of it, the only construction which disposes of all of his property is to say that the death of his wife contemplated in the third clause was a certain event which he contemplated should occur after his death. Naturally a testator leaves his property to persons whom he expects to be living at his death. It is unusual for one to make a will except in contemplation that it shall take effect as it reads when executed as of the date of his death.

Allowing his wife a life estate in the property with absolute power of disposition while she lived, with remainder over to his daughter on her death, the daughter to receive the interest on the fund into which the property was to be invested, with further remainder on her death to other devisees mentioned, harmonizes the separate clauses of the will and disposes of all the property, and is in accord with the manifest intention of the testator as shown in considering the document as a whole.

Accordingly the judgment is affirmed. All concur.