MRS. HARRY OBETZ, Also Known as MONTA OBETZ, Appellant, v. BOAT-MEN'S NATIONAL BANK OF ST. LOUIS, (a Corporation), AUBREY R. HAMMETT, JR., and LAWRENCE HOLMAN, as Executors of the Last Will and Testament of MAY HAMMONS, Deceased, LELA LOEW, FAY B. COX, CAROL SUSAN COX, a Minor, by ROBERT F. SCHLAFLY, her Guardian ad Litem, PHYLLIS BORGES, BESSIE BURNSIDES, AUBREY R. HAMMETT, MRS. COLEMAN HUBBARD, ORVILLE BILLOW, JOHN ROBERT HUBBARD, RECTOR HUBBARD, THOMAS HUBBARD, LONNIE HUBBARD, and HERVEY HUBBARD, Respondents, No. 41723—234 S. W. (2d) 618.

Special Division Three, December 8, 1950.

*Errol Joyce, Edwin J. Bean* and *Walter A. Raymond* for appellant.

*W. A. Franken, D. D. Thomas, Jr.,* and *O'Bryen, Schlafly & Griese-dieck* for respondents.

[619] VANDEVENTER, J.—This is a declaratory judgment action to construe a will and, from a decree construing it, plaintiff has appealed. For a proper understanding of the case, the will is set forth in full:

"I, May Hammons, of St. Louis, Missouri, being of sound and disposing mind and memory, do hereby make and declare this to be my last will and testament, hereby revoking any all other wills heretofore made by me.

First: I direct that all my just debts and funeral expenses be paid.

Second: I will and bequeath my Solitaire Diamond with two side diamonds set in platinum to Lela Loew, of Hale, Missouri.

Third: I will and bequeath my Solitaire Diamond, with four side diamonds, set in gold to Mrs. Harry Obetz of Mendon, Missouri.

Four: 1 large diamond, set in platinum, surrounded by twelve smaller diamonds, I will and bequeath to Fay B. Cox.

Five: I will and bequeath to Carol Susan Cox, a small diamond ring with two side diamonds, set in gold.

Six: I will and bequeath to Phyllis Borges, a small Solitaire Diamond (Maude Sheldon's engagement ring).

[620] Seven: I will and bequeath my Dinner Ring with eleven diamonds set in white gold to Bessie Burnsides.

Eight: I will and bequeath all of my clothing, jewelry and personal property not otherwise disposed of herein, remaining at the time of my death, to Lela Loew and Mrs. Harry Obetz, share and share alike.

Nine: In appreciation of the many kindnesses shown to me in the past, I will and bequeath to Aubrey R. Hammett, the sum of Ten Thousand ($10,000) Dollars. If he shall predecease me, this shall be divided among his lineal descendants living at the time of my death.

Ten: I will, devise and bequeath all the rest and residue of my estate, real, personal or mixed, and wherever situate, to the following persons in the following manner:

(a) Lela Loew, Mrs. Coleman Hubbard, Mrs. Harry Obetz, one-half of said residue to be divided between them, share and share alike.

(b) Phyllis Borges, Bessie Burnsides, and Fay B. Cox, one-fourth of said residue, to be divided share and share alike.

(c) Orville Billow, John Robert Hubbard, Rector Hubbard, Thomas Hubbard, Lonnie Hubbard, and Hervey Hubbard, one-fourth of said residue to be divided between them, share and share alike.

Eleven: If any legatee mentioned in this will shall predecease me, his or her legacy shall go to his or her lineal descendants. If said legatee leave no lineal descendants said legacy shall lapse and be distributed in accordance with the residuary clause. If any residuary legatee predecease me, leaving no lineal descendants, his share shall go to the remaining members of the class or group in which he is placed.

Twelve: If any legatee named herein or any of my legal heirs, shall institute, maintain or assist in the prosecution of any suit or

other legal action to contest this will, then I will and direct that said legatee or heir shall receive nothing from my estate, and that his or her share or legacy shall immediately lapse.

I nominate and appoint Aubrey R. Hammett, Jr., Lawrence Holman and the Boatmen's National Bank of St. Louis to be executors of this will.

In testimony whereof, I have hereunto set my hand this 10th day of March, 1947.

/s/ MAY HAMMONS.''

Plaintiff is one of the beneficiaries in the will and a cousin of the deceased, by the half-blood. Defendants, Boatmen's National Bank of St. Louis, a corporation, Aubrey R. Hammett, Jr., and Lawrence Holman are executors of the will. The other defendants are relatives. Mrs. Coleman Hubbard was an aunt, by the half-blood, the remainder were cousins once or more removed, all by the half-blood. The issues were appropriately presented by the pleadings.

Plaintiff contends that by Paragraph 8 of the will, she is entitled to one-half of the remaining personal property, after specific bequests have been deducted. All of the assets of the deceased was personalty.

The defendants contend that plaintiff does not take one-half of the residue of the estate by Paragraph 8, but takes only one-half of the personal effects of the deceased, or in other words, property of a personal nature, and that the residue of the estate should be distributed according to the provisions of Paragraph 10.

Plaintiff offered a certified copy of the inventory of the estate which was summarized in plaintiff's petition to show there were bonds of the value of $272,325.00; stocks of the value of $4,010.00; cash in the amount of $14,385.53, and other personal property of the value of $8,853.94, or a total inventoried value of $299,596.47. Also a genealogical chart, showing the relationship of the deceased to the legatees was introduced by agreement. There was also some oral testimony as to this relationship and as to the feelings of the deceased toward some of the beneficiaries of her will.

The court, in its decree, held that plaintiff, under Paragraph 8, took one-half of deceased's ''clothing, jewelry, and personal effects (being property of a personal nature) [621] not otherwise disposed of'' in the will. It is from this construction that plaintiff has appealed.

In construing this will, it is the paramount duty of this court to consider every provision thereof in order to give effect to testatrix's true intent and meaning, (Sec. 568 Mo. R. S. A.) unless contrary to public policy or established rules of law. We cannot write a new will under the guise of construction or make what we might deem a more equitable distribution of the estate. If the language of the will is ambiguous, we may consider the surrounding facts and circumstances.

Peters v. Briska (Mo. App.) 191 S. W. (2) 993. Mississippi Valley Trust Co. v. Walsh, 360 Mo. 610, 229 S. W. (2) 675. Legg v. Wagner, (Mo.) 155 S. W. (2) 146. Lyter v. Vestal, 196 S. W. (2) 769, 355 Mo. 457, 2 A. L. R. (2) 1375. Adams v. Conqueror Trust Co., 217 S. W. (2) 476, 358 Mo. 763, 7 A. L. R. (2) 286. Gannett v. Shepley, 172 S. W. (2) 857, 351 Mo. 286. Bond v. Riley, 317 Mo. 594, 296 S. W. 401.

■ In ascertaining testatrix's intent, this court may, as far as possible, put itself in the testatrix's position and view the situation from her standpoint. St. Louis Union Trust Co. v. Kern, 346 Mo. 643, 142 S. W. (2) 493. Broaddus v. Park College, 180 S. W. (2) 268, 238 Mo. App. 304. Lynn v. Stricker, (Mo. App.) 213 S. W. (2) 672.

In doing this, it may consider the amount and nature of her property and her relationship to and feelings toward the objects of her bounty. No provision should be allowed to perish by construction. Adams v. Conqueror Trust Co., supra.

■ Bearing these rules in mind, let us examine the will. Testatrix (1) directs that all her debts and funeral expenses be paid. She then (2) bequeaths to Lela Loew a Solitaire Diamond set in platinum with two side diamonds; (3) she bequeaths to Mrs. Harry Obetz a Solitaire Diamond with four side diamonds, set in gold; (4) to Fay B. Cox a large diamond set in platinum, surrounded by 12 smaller ones (5) to Carol Susan Cox, a small diamond with two small side diamonds, set in gold (6) to Phyllis Borges, a small Solitaire Diamond ring; and (7) her dinner ring with 11 diamonds set in white gold to Bessie Burnsides.

All of the foregoing were articles of personal adornment and down to this point, at least, it is clearly apparent that she was giving to her relatives those things that were in their nature personal to her. But an examination of the inventory of her estate indicates that there were many other articles of the same nature and character undisposed of. For instance, a crystal necklace, a diamond bar pin, a pair of diamond earrings, a diamond lavalier, a plastic comb and brush, a leather handbag, 3 cigarette cases, silverware, dressing table, vases, figurines, etc. Some of these articles were not as valuable as those designated in Paragraphs 2 to 7, inclusive, but were as personal in their nature as the articles designated in the specific bequests.

By Paragraph 8, she gave to the plaintiff and Lela Loew all her clothing, jewelry "and personal property, not otherwise disposed of here, * * *." If this had been the final bequest, it could well be contended that she intended plaintiff and Lela Loew to have the residue of her estate because at the time of making of the will and at the time of her death, she had nothing but personal property. However, the next provision (9) contains a bequest to Mr. Hammett of $10,000.00. Until Provision 9 was written into the will, it is

clearly apparent that the testatrix had in mind only those articles that she owned of a personal nature, her personal effects, such as jewelry, clothing and articles of personal adornment and comfort. Otherwise, why should she have gone to the trouble to insert Paragraph 10, which is a residuum clause disposing of the remainder of her estate, real, personal and mixed, wherever situate, and dividing the recipients of her bounty in three classifications. In class A each was to receive one-sixth of the remainder of her estate. In class B, each was to receive one-twelfth of the remainder of her estate and in class C, each was to receive one-twenty-fourth.

[622] If it had been the intention of testatrix to give to Lela Loew and plaintiff, by Section 8, all her personal property not specifically bequeathed to others, there would have been no need of a residuum clause in which she again, in sub-division (a) thereof, named these identical legatees. She would hardly have there given each of them one-sixth of that which they had already been given the whole. Such a construction would create an inconsistency. But if she meant by the words "personal property", her personal effects that were of a personal nature or use, then there is no inconsistency in again naming the same legatees in sub-division (a) of Paragraph 10.

In Section 11, she apparently distinguishes between specific and residual legatees and there states that should any of the legatees predecease her, such legacy shall go to the lineal descendants, if any, and if none, it shall lapse and be distributed according to the residuary clause. If any residuary legatee should predecease testatrix, leaving no lineal descendants, that legacy should go to the remaining members of the class or group to which the deceased residuary legatee belonged. If it was the intention of testatrix to dispose of all the remaining portion of her property in Paragraph 8, except the specific bequests and the $10,000.00 legacy to Mr. Hammett, she, as well as her attorney, knew that there was nothing to which the residuum clause would apply, though it seems to have been drawn with meticulous care, naming the legatees and the exact percentage of the residue that each was to receive. If plaintiff's theory of the will were to be sustained, then more than one-half of the named legatees would receive nothing and a goodly portion of the provisions of the will would mean nothing. If we hold, as respondents contend we should, that the words "personal property" in Paragraph 8 mean personal effects, articles of a personal nature such as articles of adornment, etc., then we breathe life into every provision of the will.

This rule of construction we are discussing is succinctly stated in Vol. 2, Page on Wills, Sec. 922, page 831:

"As a particular application of this general principle, if two constructions are possible to a clause of a will, one of which is in

harmony with the provisions of the rest of the will, and the other of which is at variance with them, the court will assume that the correct construction is the one which will harmonize this clause with the rest of the will.''

It is a fundamental rule of construction that words used by the testator are to be understood in their ordinary sense, unless a different meaning is indicated by the context of the will, or by the circumstances of the case. General words may be found to have been used by the testator in a limited sense, and if the circumstances indicate such use, the court should follow such meaning in preference to that given by lexicographers. The court may take into consideration the fact that the language is that of an attorney, learned in the law, and also the rule that technical words are presumed to be used in their technical sense, but this rule must fail when inconsistent with the full context of the will.

It seems to be argued by appellant that the principal reason for inserting a residuary clause in a will is to dispose of some property of testatrix that might have been overlooked, or some legacy that might have lapsed and not thereafter been covered by some other provision of the will, or some property that came into existence after the will was executed and could not, at the time of its execution, be otherwise disposed of. We do not agree with this reasoning. A residuary clause is not a catch-all, in which is cast worthless, non-existent or unwanted things to clean up, as it were, the debris of an estate. As all lawyers know, in many wills, the bulk of an estate passes by virtue of the residuum clause instead of by specific bequests. It is true that if plaintiff's construction of Paragraph 8 is correct, then in this case the residuary clause is a useless thing, by which no property would pass. But we cannot believe, viewing this will from its four corners, as we must, [623] that such was the intention of testatrix. Neither does this construction reflect carelessness on the part of her attorney. In fact, it accentuates his carefulness and clearly shows to us, that by insertion of the residuum clause, the term personal property was used in its limited and restricted sense, was so understood by testatrix and her scrivener, and not in the broad and general acceptation of the term, which would include everything except real estate. Snow et al. v. Ferril, 320 Mo. 543, 8 S. W. (2) 1008. Lynn v. Stricker, supra. Ward et al. v. Curry's Ex'r. et al., 297 Ky. 420, 180 S. W. (2) 305. Blakeman v. Harwell et al., 31 S. E. (2) 50, 198 Ga. 165.

''If the true intent and meaning of the testator can be thus clearly ascertained by the court, then all technical rules of construction must give way.'' (Bond v. Riley, 296 S. W. 401, l. c. 404, 317 Mo. 594.)

The rule is well stated in 57 Am. Jur., Wills, Sec. 1339, Page 888:

''While it is clear that the term 'personal property' is suf-

ficiently broad in its accepted technical significance to include all forms of property other than land or interests therein, if the testator intended that it should embrace so much, in a majority of cases the courts have, in view of the actual intention of the testator as disclosed by the language of his will and the circumstances surrounding its execution, construed the term as carrying a restricted rather than a broad signification. Under the terms of many wills, for example, it has been held that the phrase should be construed as passing only personal or household effects, articles of adornment, or tangible chattels generally, but not to include various species of intangible property.''

It is clear to us that testatrix did not intend to dispose of bonds, stocks and cash by using the words ''personal property'' in Paragraph 8 of her will but only those items that were personal to herself, such as those subject to personal use, comfort and adornment. Kruger's Estate, 55 Cal. App. (2) 619, 131 Pac. (2) 619:

It is argued by appellant that the rule of ejusdem generis does not apply. That the words ''jewelry'' and ''clothing'' are general words, each including the whole, an independent class and genus. Each might be construed to include the whole class when used under certain circumstances. But that is not the case here. Neither exhausts the class of ''personal property'', or ''personal effects'' or ''articles of personal adornment''. If appellant's contention is sound, there would have been no use in using the words ''jewelry'' or ''clothing'' at all as they are certainly included in the generic words ''personal property'' when used in their broadest sense. A genus may be a species with reference to a higher genus and a species may be a genus in relation to a lower species. Funk & Wagnall's New Standard Dictionary. It depends largely upon the context of the instrument in which the word is used. Furthermore, this rule is an aid to construction and not a positive rule of law and never overrules an intention that is clear. 28 C. J. S. Ejusdem, page 1049 et seq. City of Caruthersville v. Faris, 237 Mo. App. 605, 146 S. W. (2) 80. Quick v. Owens, 198 S. C. 29, 15 S. E. (2) 837, 137 A. L. R. 201.

We have carefully considered the numerous cases cited by appellant and respondents and do not question the principles of law expressed in them, when applied to the facts in each case. But the facts in those cases are not identical with the facts in the case before us and therefore, the principles enunciated lose much of their potency. As was said by this court in Shelton et al. v. Shelton et al., 348 Mo. 820, 155 S. W. (2) 187:

''The language of one will is rarely, if ever, like another and frequently a slight difference in the words used calls for different constructions of testamentary provisions similar in other respects. Even identical words properly receive diverse interpretations

when used in contexts or under circumstances which are not the same.   Therefore, decisions construing similar testamentary provisions are of small value as precedents and .must be considered with caution.''

We think the decision of the learned chancellor was correct and that the words ''personal property'' as used in Paragraph 8 [624] of the will, viewed in the light of all of its other provisions, mean the effects of the testatrix, which are of a personal nature, subject to her personal use, comfort and adornment.

Appellant objects to the testimony of Judge Holman and Lela Loew, apparently upon the theory that evidence of the testatrix's intention and her conversations in that regard, were not admissible, but that her. intentions must be found from the will itself.

Judge Holman testified that he met testatrix in St. Louis and discussed with her the making of the will. She talked about her relatives and she decided to give the matter some thought before making the will.   At one time she mentioned to him that she was particularly fond of Mrs. Hubbard; to whom she referred as her Aunt. She stated that one time when she was unemployed and injured, she stayed with Mrs. Hubbard, who evidenced a genuine affection for the testatrix and that she was particularly fond of her Aunt and appreciated her help.   She also mentioned that she had at one time visited Mrs. Loew and Mrs. Obetz (plaintiff) and they had visited with her and that she felt a little closer to them than she did to some of her relatives.   She stated that she had corresponded with Phyllis Borges.   She talked about the other relatives that were mentioned in the will, some of whom she had not seen for many years or even during her life and that she ''felt a family relationship'' with most of them she mentioned in her will.   She never said anything indicative of hatred or antagonism for any of the relatives mentioned.

Lela Loew testified that her mother was Mrs. Coleman Hubbard, whom the testatrix referred to as ''Dear Aunt Lizzie''.   She was a half-sister to testatrix's mother and they were friendly.   A letter was introduced in evidence from the testatrix to Mrs. Loew in which she referred to Mrs. Hubbard as ''Dear Aunt Lizzie''.   She further testified to the relationship between testatrix and the beneficiaries in the will.

Appellant cites a number of cases on this objection, each of which condemns evidence as to the intention of the testatrix made up of what was said before, at the time of, and after the execution of the will.

In Andre v. Andre, 288 Mo. 271, 232 S. W. 153, the scrivener was permitted to testify to everything the testator said at the time the will was made.   The court held that the weight of authority was that the scrivener could not testify as to the intention or understanding

of the testator but in this instance, such error was cumulative and harmless because other witnesses (apparently of appellant) had already testified to the same thing.

In Bernheimer v. First National Bank of K. C., 359 Mo. 1119, 225 S. W. (2) 745, the scrivener testified as to what testatrix had told him, in connection with drafting of a certain clause of the will, what her desires were. This testimony was excluded by the trial court on the ground that the intention of the testatrix must be determined solely from the contents of the will and this ruling was upheld by this court.

In Wooley v. Hays et al., 285 Mo. 566, 226 S. W. 842, the trial court received testimony as to what the testator's intentions were by admitting testimony of his conversation at the time of drawing the will. In rendering its decree, the Chancellor struck that testimony out and refused to consider it. This court held that parole testimony was permitted to identify the property of the testator or correct name of devisee so as to put the court in testator's position in order to interpret words of the will correctly, but held that no evidence, as to what the testator said as to his intention or what the scrivener meant by words used, should be admitted.

In Aurien v. Security National Bank Savings & Trust Co. of St. Louis, (Mo. App.) 137 S. W. (2) 679, it was held that parole evidence as to testator's declarations concerning his intention, whether made before, at the time of, or subsequent to the execution of the will is incompetent upon the question of the construction to be given the language of the instrument. It was further held that though the admission of this testimony by the trial court was erroneous, that the appellate [625] court would not consider it and therefore though error, it did not justify a reversal.

In Marr v. Marr, 342 Mo. 656, 117 S. W. (2) 230, evidence was admitted of what the testator said his intention was, and it was held this was error but that it need not cause a reversal of the case because the Supreme Court would exclude that testimony from consideration, the matter being in equity.

In Lankford v. Lankford, 348 Mo. 1170, 159 S. W. (2) 264, evidence of the declarations of the testator was accepted in evidence to show his intention in disposing of this estate. It was held this was incompetent.

An examination of the testimony of Judge Holman and Lela Loew does not show any statements of testatrix as to her intentions. Testimony of the relationship of the parties and the testatrix's feelings toward them was not error though in this case, as we view it, this testimony was of very little, if any, probative value.

As to the allowance of attorney's fees to appellant's counsel payable from the estate.

In the petition, it is alleged that the executors of the will have given notice to plaintiff "that, owing to the uncertain terms of the will, they are unable to make a partial distribution of the assets of said estate now due to be made and that before a distribution of the estate can be effected, and as a condition thereto, a construction of the terms of said will must be had and obtained by the Court of competent jurisdiction. That pursuant to said notice and direction * * *" plaintiff believes that Section 8 of the will should be construed.

These allegations were denied by the executors in their answer. The only evidence bearing upon this disputed question was a letter, attached to the motion for new trial, and received as evidence, dated October 20, 1948, from Judge Holman, one of the executors, to one of appellant's attorneys which states:

"The year has expired within which a suit might have been filed to contest the will of Miss Hammons or file claims against her estate. I think it is now the duty of the executors to go forward with the view of completing the administration of the estate at the earliest possible date. This, of necessity, will take some time, but we would be in a position to make a very substantial partial distribution except for a possible controversy over the construction of clause 8 of the will.

"I have not talked with you or heard from you relative to this matter since we were in St. Louis in January. We are interested in ascertaining whether or not it is still Mrs. Obetz' contention that she is entitled to one-half of the estate under that clause. If it is not, we could proceed with the partial distribution. If that is still her contention then it would seem prudent that in some way litigation be commenced with a view of a final binding determination of that question at an early date. Will you please let me hear from you in the very near future concerning her attitude?"

As we view it, this was more a letter of inquiry than direction. No one could possibly benefit by this litigation but appellant and defendant Lela Loew, who, in her answer was insisting that the residue of the estate be distributed according to the provisions of paragraph 10, and that the words "personal property" in paragraph 8 meant tangible property similar to jewelry and clothing, that is, "personal effects". We do not think that under the circumstances it would be equitable and just for the estate to be burdened with paying the attorneys' fees of the appellant. The Chancellor so held and we see no reason to overturn that decision. Sec. 1135 Mo. R. S. A. Littleton v. General American Life Ins. Co., 136 S. W. (2) 433. St. Louis Union Trust Co. v. Kaltenbach, 353 Mo. 1114, 186 S. W. (2) 578, 579. The judgment of the trial court should be affirmed.

It is so ordered. All concur.