CLAYTON L. TAYLOR ET AL., Executors of the Last Will and Testament of CLAYTON L. HUGHES, Deceased, ET AL., Respondents, v. EMLIA J. HUGHES ET AL., Defendants, OSCAR HUGHES and JULIA ELLEN HUGHES KNUDSEN, Appellants, No. 42780—251 S. W. (2d) 94.

Division One, September 8, 1952.

390

*Leon P. Embry* for appellants.

*G. Logan Marr* and *Harry H. Kay* for respondents.

■ LOZIER, C.—Defendants-appellants Oscar Hughes and Julia Ellen Hughes Knudsen (herein sometimes called Oscar Hughes and Julia Knudsen) appeal from the judgment entered in a suit to construe a will. The other defendants did not appeal. As the judgment determined the parties' respective interests in the testator's residence property, title to real estate is involved. See State ex rel. Brown v. Hughes, 345 Mo. 958, 137 S. W. 2d 544, 545. And the record affirmatively shows that these two defendants-appellants together claim a one-half interest in personalty of a total value of over $17,000. The appeal is properly here. Sec. 3, Art. V, Cons., 2 V.A.M.S., p. 31.

The suit was filed by plaintiffs-respondents Clayton L. Taylor and Ernest Hughes (herein called the executors) ''in their individual capacity.'' They are executors of the estate of their deceased grandfather, Clayton L. Hughes. The 32 defendants were the testator's other grandchildren, widow, children and great grandchildren. The executors alleged that: The probate court had directed them to bring the suit; except for final distribution, they had completed the administration of the probate estate; and they could not proceed further without judicial instructions as to their rights and duties. They asked that the will be construed and for such other relief as might be just and equitable.

Only defendants-appellants and the minor defendants answered. The answers included allegations that the will set up a trust of which the executors were trustees and asked the court to construe the will, ''to effectuate and confirm such trust and the trustees thereof and require the trustees to enter into bond as such, and to administer such trust under the jurisdiction and orders of the court.'' The joint answer of defendants-appellants also pleaded payment and partial payment, respectively, of the sums referred to in the will as advancements to them.

Clayton L. Hughes died in May, 1946. His will, executed in 1943, was duly probated. Plaintiffs-respondents qualified and are still serving as executors. The widow continued to live in the residence. According to defendants-appellants' evidence (the executors' probate court settlements), the executors have paid the widow $40 each month for her care and maintenance but have not paid her a $1,000 bequest. The initially appraised value of the estate, realty and personalty, was about $21,000. At trial time, the personalty balance was over $17,000, all in cash or government bonds. All demands against the estate have been satisfied. The probate judge testified that the order of final distribution had not been made because of the pendency of the suit.

The testator was survived by: (1) his widow, Emlia; (2) his 3 children, Ordella Taylor and defendants-appellants, Oscar Hughes and Julia Knudsen; (3) his 11 grandchildren, (a) the 7 children of his deceased son Fred, one of whom is plaintiff-respondent Ernest

Hughes, and (b) 4 other grandchildren, viz., 2 children of his son Oscar Hughes and 2 children of his daughter Ordella Taylor, one of whom is plaintiff-respondent Clayton L. Taylor; (his [97] daughter, defendant-appellant Julia Knudsen, had no children); and (4) his 17 great grandchildren—Fred's 10 grandchildren, Oscar's 3 grandchildren and Ordella's 4 grandchildren. The two other great grandchildren defendants were born after the testator's death.

We italicize portions of the will. Paragraph "Two": Devised and bequeathed the household goods and the residence property to the testator's wife, Emlia, for life, and upon Emlia's death, "the said property to become of and part of my *residuary estate* and pass according to the terms of my *residuary clause* of this will"; bequeathed Emlia $1,000 in cash; and provided that "my executors hereinafter named shall have the discretion and trust to look after my wife, and provide for her and to make her allowances necessary and proper to care for and administer unto her."

Paragraph "Three" recited advancements of $2,000 each to son Oscar Hughes and daughter Julia Knudsen and $1,000 "to the heirs of my [deceased] son, Fred Hughes; provided that all such advancements were "to be deducted from *their share in my estate* before they can *share in my residuary estate,* and they and each of them shall first pay into hotchpot before they can then *share equally with the rest.*"

Paragraph "Fourth" provided that "if any of *my heirs* shall contest this, my last will and testament, in any way, then they shall forfeit *their or his share* in my estate; and they shall be paid the sum of one dollar."

Paragraph "Fifth" directed the executors to sell, "prior to the final settlement of my estate and within three years after the date of my death, all of my property * * * and to make the sale at private sale, for the best price * * * they may deem advisable, and such sale shall not be a forced sale; and the sale shall be made at and within the discretion of my executors, and any sale in partition is strictly forbidden, prior to the time limit in this clause, my said executors to execute any contracts, deeds and other conveyances necessary to accomplish these purposes, and to pass the necessary title to the purchasers."

Paragraph "Sixth" was: "I hereby name as my children and grandchildren, Oscar Hughes, Ordella Hughes Taylor, Julia Ellen Hughes Knudsen, and Ernest, Harold, Viola, Melvin, Ruth, Earl and Evelyn Hughes, chldren of Fred Hughes, dec. *It is my will that all the rest, residue and remainder of my property, real and personal and mixed, I hereby devise, will and bequeath to each of my children, grandchildren and great grandchildren, as per capita, to share and share alike, provided that on the death of any of my children, grandchildren and great grandchildren, then the survivors, the then living,*

*children, grandchildren and great grandchildren, shall in this my will divide my estate, share and share alike; and · the descendants or spouses of any deceased devisee or legatee shall not share in my estate, in this my will.* It is my will that all my property, both real and personal, not specifically devised, in any prior clause, shall pass under and by the terms of this *residuary clause,* and that my executors, shall make this division, *to my heirs,* according to the discretion vested in them in the fifth clause of this my will."

The concluding paragraph (not numbered) named plaintiffs-respondents executors without bond and fixed their compensation.

The trial court received, over the executors' objections, this evidence of defendants-appellants as to the advancements mentioned in Paragraph "Three": The $1,000 to Fred Hughes' heirs had not been repaid or discharged; Oscar had paid, and held the testator's receipt for the payment of, his $2,000, and had filed in the probate court a "petition for discharge of lien on distributive share" based upon such payment and receipt; the executors' November 1947 semiannual settlement showed a $1,500 payment to the executors by Julia on her $2,000.

The trial court found and decreed that: Under Paragraph "One," the widow was to receive $1,000 and a life estate in the household goods and the residence; the will created a trust in the other property [98] for her care and maintenance, such trust "to be executed by the executors * * * unless and until by positive action they assume to execute such trust in their capacities as trustees rather than executors"; Paragraph " 'Three' needs no interpretation and this court cannot determine the distributive shares to which Oscar Hughes, Julia Ellen Knudsen, or any other person, may be entitled upon distribution of the estate." The court also found and decreed: "That upon the death of Emlia J. Hughes, the residue of the trust property and also the residence property * * * shall pass to and become the property of such of the children, grandchildren and great grandchildren of said Clayton L. Hughes as were living at the time of his death, share and share alike." Finally, the trial court ruled that it could not, "in this proceeding, enter an order requiring security from the testamentary trustees under the provisions of" Sec. 456.130. (All statutory references, unless otherwise indicated, are to both RSMo 1949 and V.A.M.S.)

Defendants-appellants do not complain of the rulings that the widow was to receive $1,000, a life estate in the household goods and in the residence and an income for life, and that a trust was created for her care and maintenance with the executors as trustees. Defendants-appellants' assignments make the issues here: (1) the propriety of the trial court's interpretation of Paragraph "Sixth," (2) its refusal to determine defendants-appellants' respective shares in the residuary estate upon distribution thereof, and (3) its refusal to

require the executors-trustees to give bond and administer the trust estate under the circuit court's supervision.

In every will construction case, it is our duty to read the will with "due regard to" the testator's directions therein and his "true intent and meaning." Well may a court begin its search for a testator's intent by rereading the observations of Judge White in Coleman v. Haworth, 320 Mo. 852, 8 S. W. 2d 931-933 [1-4], reread the particular will, and then pose to itself Philip's question to the Ethiopian eunuch—"Understandest thou what thou readest?"

The instant question is: To whom did Clayton L. Hughes intend to leave his residuary estate? Defendants-appellants first contend that he intended to will that estate only to his son Oscar, his daughters Ordella and Julia and the seven children of his deceased son Fred, to the exclusion of all of the other grandchildren and all of the great grandchildren. They argue that Paragraph "Sixth" itself shows that intent; that these persons were the testator's "heirs at law"; and that he "named" them in the first sentence and referred to "my heirs" in the last sentence.

The persons "named" were the testator's apparent heirs at law when he wrote his will; and, as all survived him, they would have been his heirs at law had he died intestate. But the testator did not "name" them or refer to them either as his "heirs" or as his "heirs at law." There is no reference to the statute of descents and distributions. "Heirs at law" appears nowhere in the will. The first sentence of Paragraph "Sixth" is not dispositive. Elsewhere, the testator made no bequest or devise to the persons "named," either individually or as a group. Each of the persons "named" is a member of one of the classes mentioned in the very next sentence, wherein the testator expressly willed the residuum, share and share alike to *all* of his children, grandchildren and great grandchildren.

In the last sentence of Paragraph "Sixth," the testator directed his executors to distribute the residuum to his "heirs." We believe that the classes designated in the second sentence of Paragraph "Sixth" are the "heirs" of the testator referred to in both the last sentence of Paragraph "Sixth" and in Paragraph "Fourth." See St. Louis Union Trust Co. v. Kaltenbach, 353 Mo. 1114, 186 S. W. 2d 578, 582. The testator apparently used "heirs" in the sense of "heirs at law" only when referring to "the heirs" of his deceased son Fred (Paragraph "Three"; first sentence of Paragraph "Sixth"). We rule that the testator intended the beneficiaries of his residuary [99] estate to be, not his "heirs at law," but all his surviving children, grandchildren and great grandchildren.

Defendants-appellants argue: The advancements were in excess of the shares of defendants-appellants and Fred's seven children under the will as construed by the trial court; the testator was 83 years old when he executed the will; at that time, he was worth

$21,000-$23,000''; therefore, he intended his heirs at law (to all of whom, save one, he had made advancements) to inherit his estate.

Paragraph "Three" shows only that the testator expected that defendants-appellants and Fred's children would share in the residuary estate. In case of ambiguity, the court may consider the surrounding facts and circumstances, or the "environmental circumstances." Obetz v. Boatmen's Nat. Bank of St. Louis, 361 Mo. 221, 234 S. W. 2d 618, 621; St. Louis Union Trust Co. v. Kelley, 355 Mo. 924, 199 S. W. 2d 344, 349. But any inference drawable from extrinsic facts and circumstances must yield to the fact that the testator *did not will* his residuary estate to his "heirs at law," and that he *did will* his residuary estate, share and share alike, to all of his surviving children, grandchildren and great grandchildren, which classes included each and every one of his heirs at law.

Defendants-appellants cite cases holding that, unless the will shows a contrary intent, it is presumed that the testator intended his property to pass according to the statute of descents and distributions; and that, in case of doubt, that statute is a safe guide. Those cases are inapplicable here. The language of the will expressly shows that the testator had no intention of willing his residuary estate to those who would inherit under the statute of descents and distributions.

Now, the second sentence of Paragraph "Sixth." The first clause is: "It is my will that all the rest, residue and remainder of my property, real, personal and mixed, I hereby devise, will and bequeath to each of my children, grandchildren and great grandchildren, as per capita, to share and share alike  *  *  *." The parties agree that this language, standing alone, is "clear and emphatic." The first clause unmistakably shows the testator's intent to will the residuary estate, in equal shares, to all of his children, grandchildren and great grandchildren who survived him. "Naturally, a testator leaves his property to persons whom he expects to be living at his death." Coleman v. Haworth, supra (8 S. W. 2d l. c. 936).

Standing alone, the first clause devised and bequeathed indefeasible vested interests. "Another rule is that the law favors vested estates, so that, unless the testator has by very clear words manifested his intention to the contrary, the persons who take under his will, as the members of a designated class, must be determined at the death of the testator and the estates given them vested then." Gardner v. Vanlandingham, 334 Mo. 1054, 69 S. W. 2d 947, 950. See Miller v. Kriner, (Mo.) 247 S. W. 757.

But here the next clause clearly shows the testator's intent that the interests were not to be vested. That clause is, "provided that on the death of any of my children, grandchildren and great grandchildren, then the survivors, the then living children, grandchildren and great grandchildren, shall in this my will divide my estate, share and share alike;  *  *  *." In Paragraph "Two," the widow was given a life

estate. "'Where there is a gift of a particular interest in the same property, antecedent to the gift to the person whose death is spoken of, the death, in the absence of a contrary intent is construed to be a death in the lifetime of the first taker whether subsequent or prior to the death of the testator.' 2 Fearne on Remainders, 342, Sec. 658; 28 R.C.L. 259, Sec. 232; 40 Cyc. 1500. See, also, Stevenson v. Stearns, 325 Mo. 646, 29 S. W. 2d 116." Gardner v. Vanlandingham, supra (69 S. W. 2d l. c. 950). Such is the "constructional preference" stated in Restatement, Property, Sec. 251, p. 1266, and now applied in most American jurisdictions. Anno. 20 A.L.R. 2d 830, 833.

Read together, the first and second clauses clearly show the testator's intent as to the nature of the interests, viz.: an equal share was to pass to each of his surviving children, grandchildren and great grandchildren; but the interest of each was contingent upon the particular legatee and devisee surviving the widow; and the share of any such legatee and devisee not surviving the widow was to pass, still contingently and per capita, to the testator's then living children, grandchildren and great grandchildren. We hold that the interests willed in Paragraph "Sixth" were contingent, not vested. Compare Kingston v. St. Louis Union Trust Co., 348 Mo. 448, 154 S. W. 2d 39; St. Louis Union Trust Co. v. Hamilton, 361 Mo. 548, 235 S. W. 2d 241. Contrast Gardner v. Vanlandingham, supra. And see Annos.: 49 A.L.R. 174, 250; 127 A.L.R. 602, 627; 169 A.L.R. 207, 219.

Next, the third and concluding clause—"* * *; and the descendants or spouses of any deceased devisee or legatee shall not share in my estate, in this my will." The language of the third clause is inconsistent with that of the second clause. It would seem, for example, that the testator first said that, on the death of his son Oscar, Oscar's surviving children and grandchildren (*as such survivors*) should share in the estate and then said that Oscar's children and grandchildren (*as Oscar's descendants*) should not share in the estate.

Defendants-appellants urge that we hold the entire sentence void for uncertainty. See 69 C.J., Wills, Sec. 1157, p. 110; 57 Am. Jur., Wills, Sec. 1128, p. 722, 723. See also Griffith v. Witten, 252 Mo. 627, 161 S. W. 708, 712. But we must read this will in its entirety and, despite the repugnancy of some of its provisions, ascertain the testator's intent, *if possible*. We cannot just ignore the sentence because it contains inconsistent provisions which make difficult determination of the vital question—to whom did the instant testator intend to leave his residuary estate? "The ascertaining of testator's intention is construing the will, whether his intention is hard or easy to ascertain." 2 Page, Wills (3rd Ed.), Sec. 916, p. 799.

We again quote the third clause—"* * *; and the descendants or spouses of any deceased devisee or legatee shall not share in my estate, in this my will." Only in this third clause does "descendants" appear. Why did the testator use that term? Thrice before, in the

two preceding clauses, he had described the per capita-contingent-residuary-beneficiaries as members of the three classes, "children, grandchildren and great grandchildren." And the first two clauses unquestionably show the testator's intent to treat all members of those classes alike, and to give to each his or her pro rata share of the residuary estate. We cannot conceive that, by the third clause, he intended to undo what he had just done or to deprive any member of any of those three classes of his or her equal share. For example, can it reasonably be said that, after willing equal shares each to Oscar, Oscar's two sons, C. L. Jr. and Eugene, and Eugene's four children, the testator intended that, on Oscar's death, the shares of Oscar's children and grandchildren were to lapse? Or that, on Eugene's death, the shares of all of his four children were to be extinguished?

In Obetz v. Boatmen's Nat. Bank of St. Louis, 361 Mo. 221, 234 S. W. 2d 618, 622, this court, quoting from 2 Page, Wills (3rd Ed.), Sec. 922, p. 831, restated the well-established rule that " 'if two constructions are possible to a clause of a will, one of which is in harmony with the provisions of the rest of the will, and the other of which is at variance with them, the court will assume that the correct construction is the one which will harmonize this clause with the rest of the will.' "

A reasonable interpretation of the third clause, and one which gives to it a meaning consistent with *both* the first and second clauses, is this: No part of the contingent interest of a deceased beneficiary, lapsing under the second clause, should pass to such deceased beneficiary's "descendants" *as such*; such "descendants" as were children and grandchildren of the deceased beneficiary (and hence grandchildren and great grandchildren of the testator) were not to have shares *additional* to their per capita shares.

The same result is reached if we reject the third clause as repugnant to the "general intent," "general purpose" or "underlying intent" of the testator as shown by other portions of the will. See Lang v. Taussig, (Mo.) 180 S. W. 2d 698, 702; Coleman v. Haworth, supra. The second sentence of Paragraph "Sixth," one of the only two dispositive provisions of the will, is the devise and bequest of the residuary estate. Unquestionably, the instant testator's general purpose as to that estate appears in the first two clauses, wherein he willed that estate to "each of my children, grandchildren and great grandchildren, as per capita, to share and share alike," contingent upon each such beneficiary surviving the widow. There is no reason for not giving effect to those first two clauses, separated only by a comma. Read singly and together, their meaning is very clear; there is no inconsistency; the second supplements the first. While the third clause is inconsistent with the second, such inconsistency does not cloud the clarity of the other two clauses, from which the third is separated by a semicolon. We, therefore, give effect to the two

clauses which reflect the testator's obvious general intent and reject the clause which is inconsistent with one, but not both, of the other two.

We are convinced that Clayton L. Hughes' intent was: To devise and bequeath his residuary estate to all of his surviving children, grandchildren and great grandchildren, per capita, the interest of each such beneficiary to be contingent upon his or her surviving the widow; upon the death, during the widow's lifetime, of any such beneficiary, his or her contingent interest to pass to the other beneficiaries (including the children and grandchildren of the deceased beneficiary), again per capita and still contingent upon surviving the widow; and, upon the widow's death, the residuary estate to be distributed, per capita, among the then living children, grandchildren and great grandchildren of Clayton L. Hughes. We so hold.

We concur in the trial court's ruling that it could not ''determine the distributive shares to which Oscar Hughes, Julia Ellen Knudsen, or any other persons, may be entitled upon distribution of the residuary estate.'' That estate cannot be distributed, and the ultimate beneficiaries thereof cannot be determined, until the widow dies. Neither Oscar nor Julia will be entitled to share in that estate unless he or she survives the widow and his or her contingent interest becomes vested. The trial court could not assume that either would survive the widow.

We also concur that Paragraph '' 'Three' needs no interpretation.'' Upon distribution of the residuary estate, the advancements to defendants-appellants (unless theretofore discharged) are charges against their respective shares—*if* he or she is entitled to a share. Defendants-appellants contend that the trial court erred in not finding that their respective advancements had been fully or partially discharged. However, these matters were not for decision in the instant case. On the contrary, they were matters determinable either by the probate court or (if final settlement of the probate estate is made prior to the widow's death) by the trustees themselves.

As stated, the trial court ruled that the ''trust should and is to be executed by the executors named in the will unless and until by positive action they assume such trust in their capacities as trustees rather than executors.'' Defendants-appellants do not challenge that ruling. However, they contend the court erred in refusing to require the executors-trustees to execute a bond under Sec. 456.130 and administer the trust estate under the circuit court's orders. The will named the executors and requested ''that they be allowed to serve without bond.'' Sec. 456.130 authorizes the circuit court to require a bond ''unless the will * * * creating such trust, shall, in express terms, dispense with security.'' Furthermore, the language of Sec. 456.130 is not mandatory. Under Sec. 456.150, the court ''shall, as may be just, either reject the petition or direct the trustee to give security.''

While defendants-appellants and some of the other answering defendants [102] made the request in their pleadings, none assigned any reason "why security ought to be given by the trustee" as required by Sec. 456.140. It is undisputed that the executors-trustees are complying with the testator's directions and are faithfully performing their duties. The record fails to suggest any reason whatsoever why they should be required to file a bond. And the trial court could not assume general supervision of the administration of the trust by these testamentary trustees. See Riggs v. Moise, 344 Mo. 177, 128 S. W. 2d 632; State ex rel. McManus v. Muench, 217 Mo. 124, 117 S. W. 25, 128 Am. St. Rep. 536; 18 Mo. Law Review 255.

As stated, the judgment of the trial court was that, upon the widow's death the residuary estate should pass to and become the property of such of the testator's children, grandchildren and great grandchildren as were living at the time of his death. As we have found that the interests of the testator's surviving children, grandchildren and great grandchildren were contingent only, the judgment should be and is modified to read: "* * * that upon the testator's death, the beneficial interests in the residuary estate passed contingently to such of the children, grandchildren and great grandchildren of said Clayton L. Hughes as were living at the time of his death, share and share alike; and that upon the death of the said Emlia J. Hughes, all of the property and estate then remaining, including the residence property in Stover, shall vest in and become the property of such of the testator's said surviving children, grandchildren and great grandchildren as shall survive the said Emlia J. Hughes, share and share alike."

As thus modified, the judgment is affirmed. *Van Osdol* and *Coil, CC.,* concur.

PER CURIAM:—The foregoing opinion by LOZIER, C., is adopted as the opinion of the court. All the judges concur.